UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION (MASTER FILE) NO. 5:06-CV-316 - KSF

IN RE: AIR CRASH AT LEXINGTON, KENTUCKY, AUGUST 27, 2006

**RELATING TO:  Civil Action 06-CV-371-KSF** (formerly styled Demrow v. Comair, Inc.)

TONY BYRD, et al.                                                                                       PLAINTIFFS

vs.

COMAIR, INC.                                                                                             DEFENDANT

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion to Remand [DE #191] the action to the Fayette Circuit Court.  This motion was passed in the Court's Opinion and Order remanding other cases in order to allow briefing on the jurisdictional impact of the Warsaw Convention[1] or Montreal Convention.[2]  The matter having been fully briefed, it is now ripe for review.

**I.       FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Brian Byrd was a passenger on Comair Flight 5191 that crashed August 27, 2006, in Lexington, Kentucky.  The parties agree that he had a round-trip ticket from Lexington with a stay in St. Lucia.  They do not agree, however, on whether his flight is subject to an international treaty regarding air carrier liability.

---

[1] Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, 3014, T.S. No. 876 (1934), reprinted in 49 U.S.C. § 40105 note.

[2] Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (entered into force on November 4, 2003) reprinted in S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000).

In their initial memorandum, Plaintiffs argue that neither the Warsaw Convention nor the Montreal Convention affect their motion to remand for several reasons. First, they note that St. Lucia is not a signatory to either treaty. Second, Plaintiffs made no claims under the treaties; instead, they pled only state law causes of action. Third, they urge this Court to apply the same preemption analysis to the Warsaw Convention or Montreal Convention as it applied to the Federal Aviation Act of 1958, under which Comair asserted federal question jurisdiction for purposes of removal of this and other cases [DE #423, p. 3; #448, p. 6]. Under such an analysis, they argue that Comair's "defense" of preemption will not support removal. Moreover, they claim there is no evidence the contracting parties intended to completely preempt state courts from consideration of such claims. Plaintiffs emphasize the rarity of complete preemption in the United States and the narrow interpretation to be given to removal statutes. Fourth, Plaintiffs argue that Comair waived any application of either convention by not pleading it as an affirmative defense and by not raising it in response to Plaintiffs' motion to remand. Finally, Plaintiffs argue that Comair must prove compliance with the contractual requirements of a convention before it may avail itself of the convention benefits.

Comair responds that St. Lucia need not be a signatory to the treaties in order for Brian Byrd's flight to constitute "international travel" subject to the treaties, and that both treaties preempt state law claims in substantially the same way. Comair argues, alternatively, that St. Lucia may be considered a signatory to the Warsaw Convention because it ratified other treaties or because it was a colony at the time the United Kingdom ratified it. Comair next argues that federal law exclusively governs and completely preempts claims arising under the conventions. With respect to its compliance with the conventions, it provides the affidavit of its General Attorney regarding notification routinely given to passengers. Finally, it argues that it did not waive application of the conventions and will amend its pleadings to assert a defense based upon the Montreal Convention.

Plaintiffs reply that removal jurisdiction is improper in that Comair is confusing "ordinary preemption" with "complete preemption" and that removal may not be based upon a defense of preemption. Plaintiffs note that removal was not an issue in the cases relied upon by Comair, and that a few courts have remanded similar cases, rejecting claims of complete preemption by the Warsaw Convention. They reassert the absence of evidence of the contracting parties' intent that only federal courts can hear claims to which one of the conventions applies. Plaintiffs submit that, if the Court holds that the conventions completely preempt state law claims, "there remain factual and legal issues that must be determined before any court can find that the Montreal Convention applies" [DE #448, p. 7]. For example, Plaintiffs seek discovery regarding the e-ticket and confirmation allegedly delivered to Byrd as to whether it complied with the notice requirements under the convention. Finally, Plaintiffs clearly refute Comair's arguments that St. Lucia may be deemed to be a signatory to the Warsaw Convention, but they do not respond to Comair's claim that the conventions are applicable even if St. Lucia is not a signatory party.

## II.   ANALYSIS

### A.   Background of Warsaw and Montreal Conventions' Provisions Regarding Bodily Injury Resulting From An Accident While On Board the Aircraft

#### 1.   Warsaw Convention

When the Warsaw Convention was drafted in 1929, "the airline industry was in its infancy." *Ehrlich v. American Airlines, Inc.*, 360 F.3d 366, 370 (2d Cir. 2004) (quoting *In re Air Disaster at Lockerbie, Scotland on December 21, 1988*, 928 F.2d 1267, 1270 (2d Cir. 1991) (overruled on other grounds by *Zicherman v. Korean Air Lines Co.,*, 516 U.S. 217 (1996)).

> The Convention had two primary goals:  first, to establish uniformity in the aviation industry with regard to "the procedure for dealing with claims arising out of international transportation and the substantive law applicable to such claims," as well as with regard to documentation such as tickets and waybills; second – clearly the overriding purpose – to limit air carriers' potential liability in the event of accidents.

3

*Id.* The Convention preamble states the signatories "recognized the advantage of regulating in a uniform manner the conditions of international transportation by air in respect of the documents used for such transportation and of the liability of the carrier." 49 Stat. 3014. The United States Supreme Court recognized that the primary purpose of the contracting parties was "limiting the liability of air carriers in order to foster the growth of the fledgling commercial aviation industry." *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 545 (1991).

With respect to personal injury, the Warsaw Convention was a compromise between carriers and passengers providing, generally, strict liability for bodily injury to a passenger while on board or during embarking or disembarking, but capping that liability at approximately $8,300 unless the passenger could prove the carrier engaged in willful misconduct. *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 170 (1999); 1999 WL 33292734, September 6, 2000 Letter of Transmittal from the White House to the Senate. Article 17 provided:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

The Montreal Accord[3] modified the scheme in 1966 by raising the liability cap to $75,000. *Lockerbie*, 928 F.2d at 1270, n. 2. The Montreal Protocol No. 4[4] amended Article 24 to read as follows:

---

[3] Agreement Relating to Liability Limitations of the Warsaw Convention and Hague Protocol, Agreement CAB 18900, Approved by Executive order E-23680, May 13, 1966 (docket 17325) (1966), reprinted in Civil Aeronautics Board, Aeronautical Statutes and Related Material 515-16 (1974).

[4] Montreal Protocol No. 4 to Amend the Convention for the Unification of Certain Rules Relating to International Carriage By Air, signed at Warsaw on October 12, 1929, as amended by the Protocol Done at the Hague on September 9, 1955 (Montreal Protocol No. 4), reprinted in S. Exec. Rep. No. 105-20, pp. 21-32 (1998).

> In the carriage of passengers and baggage, any action for damages, however founded, can only be brought subject to the conditions and limits set out in this Convention, without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights.

See *Tseng*, 525 U.S. at 175, n. 15.

### 2. Montreal Convention

In 1999, the International Civil Aviation Organization convened an international conference in Montreal to negotiate and adopt a new treaty to replace the Warsaw Convention. *Ehrlich*, 360 F.3d at 371, n. 4. As a result of that conference, the Montreal Convention entered into force on November 4, 2003. *Id.* at 372. The parties to the Montreal Convention recognized in the preamble, among other things, "the need to modernize and consolidate the Warsaw Convention and related instruments" and "the importance of ensuring protection of the interest of consumers in international carriage by air and the need for equitable compensation based on the principle of restitution." 1999 WL 33292734. Under the Montreal Convention, carriers are strictly liable for proven damages up to 100,000 Special Drawing Rights (approximately $135,000), and there is no limit on recovery for passenger death or injury. *Id.,* September 6, 2000 Letter of Transmittal from the White House to the Senate. Article 17 was amended to read in part:

> 1. The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft on in the course of any of the operations of embarking or disembarking.

Article 21 provides:

> 1. For damages arising under paragraph 1 of Article 17 not exceeding 100,000 Special Drawing Rights for each passenger, the carrier shall not be able to exclude or limit its liability.
>
> 2. The carrier shall not be liable for damages arising under paragraph 1 of Article 17 to the extent that they exceed for each passenger 100,000 Special Drawing Rights if the carrier proves that:
>    (a) such damage was not due to the negligence or other wrongful act or omission of the carrier or its servants or agents; or
>    (b) such damage was solely due to the negligence or other wrongful act or omission of a third party.

Article 29 provides:

> In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights. In any such action, punitive, exemplary or any other non-compensatory damages shall not be recoverable.

The "Montreal Convention is self-executing and creates a private right of action in U.S. courts." *Baah v. Virgin Atlantic Airways Ltd.,* 473 F. Supp. 2d 591, 593 (S.D.N.Y. 2007).

Compared to the Warsaw Convention, the Montreal Convention has been described as "a treaty that favors passengers rather than airlines." *Ehrlich*, 360 F.3d at 371, n. 4 (citations omitted). While the Montreal Convention contains significant improvements, "[t]he drafters 'tried wherever possible, to embrace the language of the original Warsaw Convention and its various Protocols, with the purpose of not disrupting the existing jurisprudence.... Thus, the "common law" of the Warsaw jurisprudence is vitally important to understanding the meaning of the Montreal Convention.'" *Baah*, 473 F. Supp.2d at 596, n. 7. (quoting Paul S. Dempsey & Michael Milde, *International Air Carrier Liability: The Montreal Convention of 1999*, 7 McGill University Centre for Research in Air & Space Law (2005). *See also* Article-by-Article Analysis of the Convention, 1999 WL 33292734, Article 17 comment: "It is expected that this provision will be construed consistently with the precedent developed under the Warsaw Convention and its related instruments."

### B. International Transportation

Plaintiffs first dispute that the Warsaw Convention or Montreal Convention could apply to Brian Byrd's flight because St. Lucia is not a signatory to either. The Scope of Application of each convention is set forth in Article 1. Article 1 of the Warsaw Convention provides in part:

> (2)  For the purpose of this convention the expression "international transportation" shall mean any transportation in which, according to the contract made by the parties, the place of departure and the place of destination, whether or not there be a break in the transportation or a transshipment, are situated either within the territories of two High Contracting Parties, or within the territory of a single High Contracting Party,

6

> if there is an agreed stopping place within a territory subject to the sovereignty, suzerainty, mandate or authority of another power, even though that power is not a party to this convention.

The Montreal Convention defines relevant international carriage in Article 1 as follows:

> (2) For the purposes of this Convention, the expression international carriage means any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transhipment, are situated either within the territories of two States Parties, or within the territory of a single State Party if there is an agreed stopping place within the territory of another State, even if that State is not a State Party.

The plain language of each convention includes within its scope a round-trip ticket from the United States with an agreed stopping place within another state, even if that state is not a signatory to the convention. The impact of a round-trip ticket on the applicability of these conventions was discussed in *Knowlton v. American Airlines, Inc.*, 2007 WL 273794 (D. Md. 2007). There, the passenger flew from Baltimore, Maryland, to the Dominican Republic, which is a party to the Warsaw Convention but not the Montreal Convention. The court said that a one-way trip ticket "would only be governed by the Warsaw Convention while a round-trip ticket would be governed by the superseding Montreal Convention. " *Id.* at *1, n. 1. Since the Knowlton ticket was round-trip from the United States, a signatory to the Montreal Convention, the superseding convention applied.

Based upon the Scope of Application language of the treaty, it is the opinion of this Court that Brian Byrd's round-trip ticket from the United States with an agreed upon stop in St. Lucia would be governed by the Montreal Convention, notwithstanding the fact that St. Lucia is not a signatory to that convention.

### C. The Preemptive Effect of the Conventions

#### 1. Legal Background

The parties have analyzed the preemptive effect of the conventions under typical "removal" analysis with its emphasis on narrow construction of the "complete preemption" doctrine and the

7

rule that removal cannot be based upon a defense.  *See* this Court's earlier opinion, *In re Air Crash at Lexington, Kentucky, August 27, 2006*, ___ F. Supp.2d ___, 2007 WL 1119940 at *5-8 (E.D. Ky. 2007).  Several courts have analyzed the treaties under that approach and reached conflicting results.  *See, e.g., Nipponkoa Insurance Co., Ltd. v. Globeground Services, Inc.*, 2006 WL 2861126 at *3 (N.D. Ill. 2006) ("The cases holding that the Warsaw Convention does not completely preempt the field are persuasive.  Federal question jurisdiction may not be invoked based on the Warsaw Convention defense regardless of whether it applies to limit any of plaintiff's claims"); *Mraz v. Lufthansa German* Airlines, 2006 WL 267361 at *2 (E.D. N.Y. 2006) (discussing lack of clarity on complete preemption and ordering briefing); *Singh v. North American Airlines*, 426 F. Supp.2d 38, 48 (E.D. N.Y. 2006) (denying remand because "the Warsaw convention completely preempts those claims that fall within its scope"); *Knowlton v. American Airlines, Inc.*, 2007 WL 273794 (D. Md. 2007) ("There is clearly a split of authority over whether the Montreal Convention and its predecessor completely preempt state law claims such as this one.  However, this Court is persuaded by the reasoning of those cases finding in favor of preemption").

It is the opinion of this Court that these conventions require a different analysis because of the exclusive nature of the remedy provided by the treaties.  The question is not the removal issue of whether a claim must be brought in federal court; instead, the question is whether the claim must be brought under federal treaty law or not at all.  The relevant history of treaty interpretation is summarized below.

In *Benjamins v. British European Airways*, 572  F.2d 913 (2d Cir. 1978), the court reversed its prior position and held that the Warsaw Convention created an independent cause of action for wrongful death caused by a plane crash.  In reaching this decision, the court noted that the United Kingdom, upon adopting the 1929 Convention, enacted a statute providing that "any liability imposed by Article seventeen of the said (Warsaw Convention) on a carrier in respect of the death of a passenger *shall be in substitution for any liability of the carrier in respect of the death of that*

8

*passenger either under any statute or at common law.*" *Id.* at 918-919, emphasis added. The court noted: "We do find the opinions of our sister signatories to be entitled to considerable weight." *Id.* at 919.

In deciding *In re Mexico City Aircrash of October 31, 1979*, 708 F.2d 400, 412 (9th Cir. 1983), the Ninth Circuit agreed with the Second Circuit and held that the "Convention creates an independent cause of action for wrongful death, a cause of action founded in federal treaty law." It further held that the Warsaw Convention preempts local worker's compensation law and would allow recovery if the deadheading flight attendant in that case qualified as a "passenger" under the convention. *Id.* at 418.

Soon thereafter, the Fifth Circuit held in *Boehringer-Mannheim Diagnostics, Inc. v. Pan American World Airways, Inc.*, 737 F.2d 456, 458 (5th Cir. 1984) that "the Warsaw Convention creates the cause of action and is the exclusive remedy." The court emphasized that "[a]n obvious major purpose of the Warsaw Convention was to secure uniformity of liability for air carriers." Accordingly, it held that state law relating to the cause of action "is preempted." *Id.* at 459. The plaintiff was entitled to recover under the Warsaw Convention for damaged cargo, but could not recover attorneys' fees under Texas law.

*In re Air Disaster at Lockerbie, Scotland*, 928 F.2d 1267 (2d Cir. 1991) (overruled on other grounds by *Zicherman v. Korean Air Lines Co.,*, 516 U.S. 217 (1996)), framed the question as follows: "[T]he question we must decide is whether state causes of action are preempted when the state claim alleged falls within the scope of the Convention.[5] The answer to the question we believe is 'yes,' for several reasons." *Id.* at 1273. The court noted the Fifth and Ninth Circuit decisions and that "other contracting parties have also concluded that the Convention cause of action is exclusive." *Id*. at 1274. It cited French court decisions and implementing statutes in

---

[5] This issue was clearly distinguished in the opinion from the issue of conflict preemption. *Id*. at 1273.

9

England, Canada and Australia in support. The *Lockerbie* court relied on the doctrine of preemption of state law "when the subject matter demands uniformity vital to national interests such that allowing state regulation 'would created potential frustration of national purposes.'" *Id.* at 1275, citing *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244 (1959). The court concluded that allowing state causes of action "would introduce such great confusion into this subject as to destroy any hope of uniformity in applying the Convention. The Convention therefore bars state wrongful death actions in cases arising under it." *Id.* at 1270.

In *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530 (1991) the Supreme Court held that Article 17 does not allow recovery for mental or psychic injuries unaccompanied by physical injury. Despite urging by Eastern Airlines "to hold that the Warsaw Convention provides the exclusive cause of action for injuries sustained during international air transportation," the court declined to reach the issue because it was not addressed in the court below. *Id.* at 553.

In 1996, the Sixth Circuit addressed the Warsaw Convention in *Bickel v. Korean Air Lines Co., Ltd.*, 83 F.3d 127 (1996), *vacated in part on separate issue*, 96 F.3d 151 (6th Cir. 1996), a case involving passengers whose plane was shot down over Russian airspace. It followed *Lockerbie* in holding that the "Warsaw Convention provides a cause of action for injuries and deaths occurring on international commercial flights...." *Id.* at 129. The court further noted that the Convention "embodies a concrete federal policy of uniformity and certainty." *Id.* at 130.

In *Potter v. Delta Air Lines, Inc.*, 98 F.3d 881 (5th Cir. 1996), the Fifth Circuit returned to the issue of preemption in the context of an airline passenger personal injury that did not satisfy the definition of an "accident" under the Warsaw Convention. The court said: "We conclude that the subject matter of the Convention requires uniformity and thus provides the exclusive cause of action under article 17 for personal injuries and death." *Id.* at 885. It continued: "The Convention's goals of uniformity and certainty would be frustrated were we to allow Mrs. Potter to assert her state law claims, even where the Convention does not provide her a remedy." *Id.* As a result, not

10

only were state law causes of action for claims within the scope of the Convention preempted (as in *Boehringer*), but also state law causes of action for claims outside the scope.  "Thus, we conclude that article 17 of the Warsaw Convention creates the exclusive cause of action and the exclusive remedy for all international transportation of persons performed by aircraft for hire." *Id.* at 887.

Two years later, the United State Supreme Court decided the issue that it reserved in *Floyd* and *Air France v. Saks*, 470 U.S. 392 (1985), regarding "whether the Convention 'provides the exclusive cause of action for injuries sustained during international air transportation.'" *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 162 (1999).  Tseng was subjected to an intrusive security search in New York and filed a state law personal injury claim for her psychosomatic injuries.  The district court dismissed the claim because Tseng did not sustain any bodily injury, and the Convention does not permit recovery for psychic or psychosomatic injury unaccompanied by bodily injury. *Id.* at 164.  It further held that she could not pursue her claims under New York law.  The court of appeals reversed, holding that the injury was outside the scope of the convention because no accident occurred, but that Tseng could pursue her claims under local law. *Id.* at 165.  The Supreme Court reversed and held that "recovery for a personal injury suffered 'on board an aircraft or in the course of any of the operations of embarking or disembarking,' Art. 17, 49 Stat. 3018, if not allowed under the Convention is not available at all." *Id.* at 161.  "Recourse to local law, we are persuaded, would undermine the uniform regulation of international air carrier liability that the Warsaw Convention was designed to foster." *Id.*

In reaching this conclusion, the court noted the United States' interpretation of Article 24 that would "preclude a passenger from asserting any air transit personal injury claims under local law, including claims that failed to satisfy Article 17's liability conditions" and held that "the Government's construction of Article 24 is most faithful to the Convention's text, purpose, and

11

overall structure."[6]  *Id.* at 168-69.  "The cardinal purpose of the Warsaw Convention, we have observed, is to 'achiev[e] uniformity of rules governing claims arising from international air transportation.'"  *Id*. at 169, quoting *Floyd*, 499 U.S. at 552.  The court continued:

> Given the Convention's comprehensive scheme of liability rules and its textual emphasis on uniformity, we would be hard put to conclude that the delegates at Warsaw meant to subject air carriers to the distinct, nonuniform liability rules of the individual signatory nations.

*Id.* at 170.  The court found the drafting history consistent with this understanding of the preemptive effect of the Convention.  *Id.* at 173-74.  In response to an argument that federal preemption of state law is disfavored generally, the court said that the "nation-state, not subdivisions within one nation, is the focus of the Convention and the perspective of our treaty partners.  Our home-centered preemption analysis, therefore, should not be applied, mechanically, in construing our international obligations."  *Id.* at 175.  The court noted that decisions of other Convention signatories "corroborate our understanding of the Convention's preemptive effect."  *Id.*  The court further clarified its decision in *Zicherman v. Korean Air Lines Co., Ltd*., 516 U.S. 217 (1996) as holding that the Convention determined "whether there is liability," but left to local law the "determination of the compensatory damages available to the suitor."  *Tseng*, 525 U.S. at 170.

Subsequently, several circuits have followed *Tseng* in holding that the Warsaw Convention provides the exclusive remedy for claims within its scope.  The Eighth Circuit held in *Husmann v. Trans World Airlines, Inc.*, 169 F.3d 1151, 1152 (8th Cir. 1999), that state law claims for injury arising from tripping over luggage while boarding were completely preempted by the Warsaw Convention and were barred by limitations.  In response to a dissenting opinion that preemption did not make the state law causes of action removable, the court said: "We also think the Supreme Court's holding that the Warsaw Convention provides the exclusive cause of action for injuries

---

[6] The court also noted that the "exclusivity question before us has been settled prospectively in a Warsaw Convention protocol (Montreal Protocol No. 4) recently ratified by the Senate."  *Id.* at 160.  However, this revision "merely clarifies, it does not alter, the Convention's rule of exclusivity."  *Id.*  at 175.

12

sustained during international air transportation answers the dissent's argument that Husmann's claim is not removable under the well-pleaded complaint rule." *Id.* at 1153, n. 5.

In *Carey v. United Airlines*, 255 F.3d 1044 (9th Cir. 2001), the court affirmed summary judgment in favor of the airline on Carey's state law claims for emotional and mental distress arising from alleged willful misconduct by a flight attendant. "[W]e see no basis for concluding that the Warsaw Convention does not apply to claims arising out of intentional misconduct. Because the Warsaw Convention does apply to such claims, Carey has a remedy. Under *Tseng*, it is his only one." *Id.* at 1051. *See also Dazo v. Globe Airport Security Services*, 295 F.3d 934, 940 (9th Cir. 2002) ("The Warsaw Convention provides the exclusive remedy for claims arising out of a carrier's intentional misconduct").

In *King v. American Airlines, Inc.*, 284 F.3d 352 (2d Cir. 2002), the court affirmed dismissal on the pleadings of claims of discriminatory bumping brought pursuant to 28 U.S.C. § 1981 and the FAA because they were not brought within the Warsaw Convention's two-year statute of limitations. "[T]he Warsaw convention created a comprehensive liability system to serve as the exclusive mechanism for remedying injuries suffered in the course of the 'international transportation of persons, baggage, or goods performed by aircraft.'" *Id.* at 356-57. "The aim of the Warsaw convention is to provide a single rule of carrier liability for all injuries suffered in the course of the international carriage of passengers and baggage." *Id.* at 361. *See also Magan v. Lufthansa German Airlines*, 339 F.3d 158, 161 (2d Cir. 2003) ("A passenger whose injuries fall within the scope of the Warsaw Convention is either entitled to recovery under the Convention or not at all").

The Eleventh Circuit followed *Tseng* in *Marotte v. American Airlines, Inc.*, 296 F.3d 1255 (11th Cir. 2002), when it granted summary judgment for the airlines on multiple state law claims associated with alleged assault by a flight attendant. "The Supreme Court has held that the Warsaw Convention is the exclusive mechanism of recovery for personal injuries suffered on board an aircraft or in the course of embarking or disembarking from an airplane." *Id.* at 1259.

13

The Fifth Circuit followed *Tseng* in *Mbaba v. Societe Air France*, 457 F.3d 496 (5th Cir. 2006), holding that state law claims regarding excess baggage fees were completely preempted by the Warsaw Convention. "For these reasons, the Warsaw Convention preempts Mbaba's claims. To hold otherwise would undermine the Convention's goal of uniformity." *Id.* at 500.

With respect to a treaty interfering with the states, the Supreme Court recently said:

> Of course, it is well established that a self-executing treaty binds the States pursuant to the Supremacy Clause, and that the States therefore must recognize the force of the treaty in the course of adjudicating the rights of litigants. See, e.g., *Hauenstein v. Lynham,* 100 U.S. 483, 25 L.Ed. 628 (1880). And where a treaty provides for a particular judicial remedy, there is no issue of intruding on the constitutional prerogatives of the States or the other federal branches. Courts must apply the remedy as a requirement of federal law.

*Sanchez-Llamas v. Oregon*, 126 S.Ct. 2669, 2680 (2006).

2.  Application of Legal Background to Plaintiffs' Claims

Although there is some disagreement among the courts, especially before *Tseng*, the foregoing discussion shows that the circuit courts considering the issue after *Tseng* all agree the Warsaw and Montreal Conventions provide the exclusive remedy for claims within the scope of the treaties. As the court said in *Tseng*, the construction "most faithful to the Convention's text, purpose and overall structure" was that which would "preclude a passenger from asserting any air transit personal injury claims under local law." *Tseng*, 525 U.S. at 168-69. This construction is much broader than mere conflict preemption.

The Sixth Circuit has not specifically addressed this issue, but it has recognized the federal cause of action created by the Warsaw Convention and the "federal policy of uniformity and certainty" embodied by the treaty. *Bickel,* 83 F.3d at 130. In light of the foregoing analysis, it is the opinion of this Court that the Warsaw and Montreal Conventions have preempted all state law causes of action for matters within their scope. *Tseng*, 525 U.S. at 168-69; *Lockerbie*, 928 F.2d at 1273; *Husmann*, 169 F.3d at 1152; *Carey*, 255 F.3d at 1051; *Magan*, 339 F.3d at 161; *Marotte*, 296 F.3d at 1259; *Mbaba,* 457 F.3d at 500

This action is unquestionably a claim for death of a passenger as a result of an accident on board an aircraft within the scope of Article 17 of the Montreal Convention. Neither party argues to the contrary. Accordingly, it is the opinion of this Court that, assuming the Montreal Convention is applicable under the facts of this case, a cause of action pursuant to the Convention is the exclusive remedy available for Plaintiffs' claims against Comair. Plaintiffs have no claim under state law causes of action. *Tseng*, 525 U.S. at 170.

The procedural posture of this case as being before the Court on a motion to remand confounds the analysis somewhat by misdirecting the focus to the question of which court may hear the claim. As the court said in *Tseng*, the United States' "home centered preemption analysis ... should not be applied mechanically" in construing an international obligation. *Tseng*, 525 U.S. at 173. The focus of the analysis should be on whether any claim within the scope of the treaties can be brought under state law. This Court has concluded that it cannot.

The posture of the case, however, does not change the ultimate outcome from a practical standpoint. Comair could have moved to dismiss in state court for failure to state a claim. When Plaintiffs filed an amended complaint under the federal treaty, the case would then have been removable. Likewise, Plaintiffs could now file a claim under federal law in state court and wait to see if Comair removed it back to this court. Judicial economy would not be furthered by such procedural hurdles, however. Accordingly, Plaintiffs' motion to remand is denied without prejudice to renew it if subsequent discovery and briefing demonstrate that Comair is not entitled to the benefits of the Montreal Convention under the facts of this case.

      3.      <u>Whether the Montreal Convention Applies Under the Facts of This Case.</u>

Plaintiffs argue there are factual and legal issues to be determined before a court can hold that the Montreal Convention is applicable to this case [DE #448, p. 7]. Plaintiffs urge that Comair waived the applicability of the convention by not asserting it as an affirmative defense. However, Fed. R. Civ. P. 12(h)(2) provides that "[a] defense of failure to state a claim upon which relief can

be granted ... may be made ... by motion for judgment on the pleadings, or at the trial on the merits." Thus, Comair could raise the preemption issue at any time by filing a motion to dismiss for failure to state a claim. This Court disagrees that the issue has been waived.

Plaintiffs also argue there is a need for discovery to determine whether Comair complied with the notice requirements under the convention so as to be entitled to its benefits. The case on which Plaintiffs rely, *Notarian v. Trans World Airlines, Inc.*, 244 F. Supp. 874 (D.C. Pa. 1965), was decided under the language of Article 3 of the Warsaw Convention regarding the strict requirement of issuing a passenger ticket. The Montreal Convention amended Article 3 to require certain notice be given to a passenger, but then said:

> 5. Non-compliance with the provisions of the foregoing paragraphs shall not affect the existence or the validity of the contract of carriage, which shall, nonetheless, be subject to the rules of this Convention including those relating to limitation of liability.

If discovery reveals factual information to support an argument that the Montreal Convention is not applicable to the present case, Plaintiffs may renew their motion to remand. If relevant, the parties should address the impact of Article 3(5) in any briefing.

### III.   CONCLUSION

Brian Byrd's round-trip ticket from Lexington, Kentucky, with a stop in St. Lucia constitutes international carriage within the meaning of the Montreal Convention. The Montreal Convention preempts all state causes of action and is the exclusive remedy for passenger death caused by an accident while on board the aircraft.

Accordingly, **IT IS ORDERED** that Plaintiffs' Motion to Remand [DE #191] is **DENIED** without prejudice to renew it in the event of discovery of an appropriate factual basis for same.

This June 26, 2007.



Signed By:

*Karl S. Forester*  KSF

**United States Senior Judge**