UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION (MASTER FILE) NO. 5:06-CV-316 - KSF

IN RE: AIR CRASH AT LEXINGTON, KENTUCKY, AUGUST 27, 2006

RELATING TO: ALL CASES

OPINION AND ORDER

This matter is before the Magistrate Judge on the motion of Comair, Inc. ("Comair") for a protective order against disclosure of its Aviation Safety Action Program reports and motion to quash Rule 30(b)(6) deposition notice [DE #1200].  A telephone conference between the parties was conducted December 17, 2007 and a briefing schedule established for the motion. The deposition was continued pending a ruling on the motion for protective order.  Motions by the Air Line Pilots Association ("ALPA") and the Regional Airlines Association ("RAA") to file amicus briefs were also granted.  All briefs having been filed, the motion is ripe for review.

I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On November 21, 2007, Plaintiffs noticed the deposition on December 20 of a corporate representative most knowledgeable regarding Comair's Aviation Safety Action Program ("ASAP") reports.  Comair was also asked to produce:

> All ASAP reports involving or in any way connected to any runway incursion; attempted take-off from a runway other than the runway for which the subject aircraft was cleared for take-off; any report relating to an aircraft lining up on an incorrect runway prior to commencing the take-off roll; any attempted take-off from a taxiway; any confusion at Blue Grass Airport regarding runway and/or taxiway configuration; and/or any report wherein a flight crew violated air traffic control instructions during ground operations.

[DE #1105].

By way of background, ASAP reports arise from voluntary programs initiated in 1996 by the FAA whereby airline employees may report safety-related incidents to an Event Review Committee, typically consisting of a representative of the airline, the airline pilots' union and the FAA.  70 J. Air

L. & Com. 83, 104 (Winter 2005).  The FAA takes "no action" if the report is the only source of information.  The FAA is limited to administrative action, a letter of correction or a warning notice, if the report is not the only source.  In any event, the report cannot be used by the company for disciplinary action, although corrective action may be required.[1]  *Id.*  In summary:

> An ASAP provides a vehicle whereby employees or participating air carriers and repair station certificate holders can identify and report safety issues to management and to the FAA for resolution, without fear that the FAA will use reports accepted under the program to take legal enforcement action against them, or that companies will use such information to take disciplinary action.

FAA Advisory Circular No: 120-66B issued November 15, 2002.  On September 3, 2003, the FAA issued Order 8000.82 providing that the FAA will not release ASAP information unless agreed to by the submitting party or unless ordered by a court of competent jurisdiction.  *Id.* at 105.  *See also* 49 U.S.C. § 40123.

In the present case, Comair moved on December 13, 2007, for a protective order against disclosure of any ASAP reports and to quash the 30(b)(6) deposition notice claiming that disclosure of any ASAP reports would contradict the intent of Congress and the FAA and, further, that the reports were privileged under the self-critical analysis privilege [DE #1199].  A memorandum in support of the motion followed on December 14 in which Comair claimed that disclosure of safety information submitted to the FAA was prohibited by statute [DE #1204, p. 4] and that there was significant public interest in protecting the reports [*id.*, p. 6].  Comair further relied on the common law privilege recognized under FRE 501 in *In re Air Crash Near Cali, Colombia on December 20, 1995*, 959 F. Supp. 1529 (S.D. Fla. 1997) and *Tice v. American Airlines, Inc.*, 192 F.R.D. 270 (N.D. Ill. 2000), as well as the self-critical analysis privilege recognized in *ASARCO, Inc. v. N.L.R.B.*, 805 F.2d 194, 199-200 (6th Cir. 1986) where a labor union was denied an internal investigative report to use for collective bargaining.  To the extent that state law governs, Comair claimed that Kentucky

---

[1]  To qualify for the program, the incident "must appear to have been inadvertent, not appear to involve an intentional disregard for safety, criminal activity, substance abuse, controlled substances, alcohol, or intentional falsification of records."  *Id.*, p. 104; *see also* FAA Advisory Circular No: 120-66B [DE #1263, Ex. 1].

courts would adopt such a privilege under the facts of this case [*id.*, p. 13]. Lastly, Comair claimed that Plaintiffs cannot show a substantial need for the ASAP reports.

The ALPA, a labor organization representing pilots employed by numerous commercial airlines, filed an amicus brief in support of Comair's motion to preclude disclosure of the ASAP reports [DE #1253]. It noted that the United States is a party to the 1947 Convention on International Civil Aviation (also known as the *Chicago Convention*), which offered in 2001 "Legal Guidance for the Protection of Information From Safety Data Collection and Processing Systems" that included the use of safety information for civil proceedings against operational personnel as an "inappropriate use." [DE #1253, Ex. 1; ANNEX 13]. The ALPA urges that use of self-reporting information for purposes other than safety "will inhibit pilots from making reports" [DE #1253, p. 5]. It argues that pilots make reports "with the understanding that they are confidential and will be used solely for purposes of flight safety and will not be used to support litigation against themselves or their company." As authority for this understanding, it cites 49 U.S.C. § 40123 and 14 C.F.R. Part 193. *Id.*, p. 6. The amicus brief further relies on the Declaration of Donald H. McClure, ALPA's Air Safety Coordinator, who has extensive experience with the ASAP program. Mr. McClure offers several examples of safety improvements resulting from pilots reports and opines that "the release of ASAP reports for use in litigation will have a chilling effect on this highly successful safety program and the willingness of pilots to voluntarily provide this critical safety information...." *Id.*, Ex. 2, p. 2]. The amicus brief expands on this opinion to suggest that pilots would refrain from self-reporting if it might lead to "the hostility of cross-examination, the threat of acting as [a] witness against their employer, or to the danger of their own possible civil liability." [DE #1253, p. 7]. It further suggests that airlines would not participate "if the data has the potential to be used by litigants to support a case against the company." *Id.*, p. 8. The ALPA also agrees with Comair that ASAP information should be protected under the self-critical analysis privilege.

The RAA, a trade association representing regional airlines, filed an amicus brief in support of Comair [DE #1261]. It argued that the program was designed to encourage disclosure of safety

information "without fear of punitive legal enforcement sanctions." [*Id.*, p. 3].  It expressed concern the information would not be provided "if employees and carriers feared the consequences of public disclosure."  *Id.*, p. 5.  It urged that disclosure of the information to civil litigants would deprive the public of the safety benefits and "contradict well-established Congressional intent."  *Id.*, p. 6. Finally, it argued that ASAP information is protected under a common law privilege and the self-critical analysis privilege.  *Id.*

The FAA's brief in support of Comair noted that the voluntary ASAP program encourages employees to self-report their own mistakes "without fear of discipline or punishment from either the airline or FAA."  [DE #1263, pp. 1-2].  It mentioned that the reports are not subject to Freedom of Information Act ("FOIA") requests, but acknowledged that it will produce the reports where "ordered to do so by a court of competent jurisdiction" pursuant to 14 C.F.R. § 193.7(f).  It suggested that airlines and employees would be less likely to report ASAP information if the reports "were not kept from public disclosure" of if they could be used for "other than safety enhancement purposes." [*Id.*, pp. 2-3].

In response to the ALPA and RAA, Plaintiffs note that Congress has not found it necessary to make ASAP reports privileged [DE #1286, p. 2].  The protection offered was that air crews could report safety incidents "without fear of reprisal by their employers"; it was "not to allow airlines to keep reports of safety concerns secret."  *Id.*  Plaintiffs argue that the "*Amici* ask this Court to do what Congress did not do:  create a privilege for ASAP reports."  *Id.*  Plaintiffs note that little more than speculation supports the claims that pilots and carriers would cease participation in the program if reports were disclosed in this litigation under a protective order.  Plaintiffs characterize ALPA's argument as follows:  "ALPA believes that its pilots will intentionally ignore or suppress safety issues that they witness, issues which could lead to the death of hundreds of passengers, and of the pilots themselves, in order to avoid having to be deposed."  *Id.*, p. 3.  Plaintiffs cite a recent article in *Air Line Pilot* published by ALPA stating that initially "pilots tend to send in [ASAP] reports primarily because of the reporting incentives" of no company discipline or FAA enforcement

4

action.  As they get feedback and see changes made to fix problems, they "begin to submit the sole-source reports that are the real nuggets of an ASAP program."  *Id.*, p. 4.

Plaintiffs also argue that the "goals" reflected in the federal statutes, regulations and FAA advisory circulars are to protect the reports from disclosure to the general public in response to FOIA requests and not to prohibit discovery of relevant evidence by litigants.  *Id.*  Plaintiffs say they seek the reports solely for purposes of this litigation, and that the reports would be subject to the Court's protective order for confidential documents.  *Id.*, p. 5.  They claim that air safety would be undermined if carriers could refuse to take corrective action after repeated warnings of a safety issue, but then hide that information from victims harmed by the safety problem by refusing to disclose the relevant ASAP reports.  Finally, Plaintiffs argue that the possibility of future reluctance to report does not warrant the extraordinary step of judicially creating a privilege where Congress felt none was necessary.  *Id.*, pp. 5-6.

Regarding the FAA's submission, Plaintiffs claim it should be disregarded because the FAA did not request permission to file a brief during the December 17 conference call.[2]  They also note that the FAA confirms there is no statutory privilege and that it can be compelled by a court to produce ASAP reports.  They attach significance to the absence of any FAA argument regarding a common law privilege and characterize the submission, generally, as focusing on an objection to broad, public disclosure.  *Id.*, pp. 6-7.  Plaintiffs also state that the FAA has already produced ASAP post-accident reports in this litigation without objection by Comair.

In response to Comair's motion, Plaintiffs note Comair's acknowledgment that no statute or regulation creates a privilege for ASAP reports and that Kentucky does not recognize a self-critical analysis privilege [DE #1259, p. 3].  Plaintiffs rely on FAA Advisory Circular ("AC") 120-66B which focuses on voluntary reporting "without fear that the FAA will use reports accepted under the program to take legal enforcement action against them, or that companies will use such information

---

[2]  The FAA is a party in these actions and is affected by the discovery requests.  No special permission was necessary to file a brief.

to take disciplinary action." *Id.*, p. 4.  The focus of FAA Order 8000.82 is to protect the reports from "public" disclosure by the FAA, but Plaintiffs say they are seeking only disclosure for purposes of this litigation and subject to the general protective order in place.  *Id.*, p. 10.   Plaintiffs note that even the FAA will publically disclose ASAP reports "to correct a condition that compromises safety or security, if that condition continues uncorrected."  14 C.F.R. § 193.9.

Plaintiffs disagree that disclosure under the limited circumstances they propose would have the chilling effect urged by Comair.  They argue it is in every pilot's interest to report safety issues voluntarily so that corrective action can be taken and safety for everyone, including the crew, can be further enhanced.  Plaintiffs alleged in their complaints that the captain and first officer of Comair Flight 5191 committed numerous specific violations involving basic pilot practices.  They claim if Comair's ASAP reports relate to those issues or to the practices of these pilots but Comair did not address those concerns, it must be held accountable for its failure.  *Id.*, p. 6.

Plaintiffs contend that state law controls the availability of privileges in this case and that Kentucky specifically declined to judicially adopt a self-critical analysis privilege.  It distinguishes Comair's authorities as all arising under federal law and as not encompassing facts such as these. *Id.*, pp. 6-8, 11-13.  Even if federal law were applicable, Plaintiffs note that Comair concedes there is no statutory privilege per se for the reports.  Plaintiffs claim that Congress spoke loudly with that silence.  *Id.*, p. 9.

Finally, Plaintiffs argue that, even if a self-critical analysis were to be recognized, their need for the reports outweighs any privilege [DE #1259, pp. 13-19].  They assert that it is not fair for Comair and its witnesses to provide "selective glimpses" into the ASAP program based upon vague recollections.  They note that different Comair witnesses testified inconsistently regarding the ASAP reports of incidents such as runway incursions.  *Id.*, p. 14.  They cite testimony reflecting that ASAP Coordinator Paul Vislosky had only his memory to rely upon regarding whether reports of certain types of incidents were made or might even exist.  They also note that no objections regarding confidentiality were raised during questioning of Mr. Vislosky about the ASAP reports.

Comair replies relying on the *Amici* briefs' suggestion that "disclosure of the reports would have a crippling effect on the ASAP." [DE #1289, p. 2]. Comair urges that the program "was built on and recognized the value of confidentiality." *Id.*, p. 3. Comair urges the court to create a privilege for ASAP reports to protect confidentiality. Comair claims it, the ALPA, the RAA, and the FAA cannot rely on "Plaintiffs' promise that the reports will remain confidential." *Id.*, p. 4. Comair disputes that state law provides the rule of decision in these cases and notes that some cases are brought under federal law. *Id.*, p. 5. It further argues that a uniform, federal law should apply to any issue of privilege and urges that a common law or self-critical analysis privilege be applied. *Id.*, pp. 6-7. Comair claims that Plaintiffs have not shown a compelling need for the reports. *Id.*, p. 10. Finally, they reply that the prior deposition of Mr. Vislosky satisfied Plaintiffs' needs and the deposition notice should be quashed. *Id.*, p. 11.

## II.   ANALYSIS

When addressing similar arguments regarding the need for confidentiality and the creation of a privilege, the United States Supreme Court said that privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710 (1974). "The allowance of the privilege to withhold evidence that is demonstrably relevant in a ... trial would cut deeply into the guarantee of due process of law and gravely impair the basic function of the courts." *Id.* at 712.

### A.   Congressional Intent to Protect ASAP Reports from Discovery by Litigants

Comair argues that "disclosure of any ASAP reports will contradict the intent of Congress as expressed in 49 U.S.C. § 40123." [DE #1204, p. 3]. It later admits, however, that "Congress did not create a statutory privilege specifically for ASAP reports." [DE #1289, p. 4]. Congress is well aware of how to protect sensitive aviation information from litigation discovery. It expressly prohibited discovery of cockpit voice recorder transcripts as follows:

Discovery and use of cockpit and surface vehicle recordings and transcripts
(a) Transcripts and recordings –

7

(1) Except as provided by this subsection, **a party in a judicial proceeding may not use discovery to obtain** –

    (A)   any part of a cockpit or surface vehicle recorder transcript that the National Transportation Safety Board has not made available to the public under section 1114(c) or 1114(d) of this title; and

    (B)  a cockpit or surface vehicle recorder recording.

(2)    (A)   Except as provided in paragraph (4)(A) of this subsection, **a court may allow discovery by a party** of a cockpit or surface vehicle recorder transcript if, after an in camera review of the transcript, the court decides that –

        (i)  the part of the transcript made available to the public under section 1114(c) or 1114(d) of this title does not provide the party with sufficient information for the party to receive a fair trial; and

        (ii)  discovery of additional parts of the transcript is necessary to provide the party with sufficient information for the party to receive a fair trial.

49 U.S.C. § 1154 (emphasis added).  The parties are familiar with this statute, as they relied on it when Plaintiffs recently moved to compel production of the cockpit voice recorder recording [DE #861].  As this statute reflects, when Congress believes protection from discovery is important, it says so and spells out requirements for prior *in camera* review and findings by a court.

By contrast, 49 U.S.C. § 40123 simply provides that the FAA, or any agency receiving information from the FAA, shall not disclose voluntarily-provided safety related information.  The regulation implementing this statute, 14 C.F.R. Part 193 discusses the expressed concerns that this information, "when in the hands of a government agency, may be required to be released to the public through FOIA or other means."  It also cites the legislative history regarding "reluctance to share such information if it will be publicly released because it could easily be misinterpreted, misunderstood, or misapplied."  The Background discussion says that 49 U.S.C. § 40123 was added to provide "relief from these concerns."  FAR Part 193 Final Rule [DE #1288, Ex. 3].  Public disclosure is expressly provided for when it is "to correct a condition that compromises safety or security, if that condition continues uncorrected" and "to carry out a criminal investigation or prosecution."  14 C.F.R. §193.9.  Additionally, 14 C.F.R. § 193.7(f) provides that information will be released when "ordered to do so by a court of competent jurisdiction."  FAA Order No. 8000.82

8

states as its purpose:  "This order designates information received by the agency from an Aviation Safety Action Program (ASAP) as protected from public disclosure in accordance with the provisions of Title 14 of the Code of Federal Regulations (14 C.F.R.) part 193."

The briefs filed by the RAA and FAA also focus on the concerns associated with "public" disclosure of the reports.  The ALPA argues that reporting employees understand the reports "will not be used to support litigation against themselves or their company" and relies on the statute and regulation for support [DE #1253, p. 6].  It does not explain how such an understanding could arise or survive, however, in light of FAA regulations expressly providing for disclosure for uncorrected safety conditions, criminal investigations or prosecutions, and court orders.  14 C.F.R. §§ 193.7(f), 193.9.

This Magistrate Judge is not persuaded by the Legal Guidance offered regarding the Chicago Convention.  There is no indication that this document has any binding effect on any party to the treaty.  Instead, it appears to be a suggestion to legislative bodies in signatory states because the members noted that "existing national laws and regulations in many States may not adequately address the manner in which safety information is protected from inappropriate use." [DE #!253, Ex. 1, p. 3].  This Court is bound by the existing law expressed by Congress, not some possible future law.  *Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist.*, 455 F.3d 690, 697 (6th Cir. 2006) ("We cannot allow a propensity to speculate as to yet unarticulated law to allow us to indulge our own predisposition").

The plain language used by Congress and the FAA reveals that the protection given ASAP reports is limited, and simply precludes government agencies from publicly disclosing the information pursuant to FOIA requests.  Disclosure in litigation was obviously contemplated, as the FAA agreed to produce the reports pursuant to a court order.  There is no provision to protect carriers from discovery requests such as the present one where the information is unquestionably relevant and any documents produced could be subject to a protective order.  Accordingly, it is the

opinion of this Magistrate Judge that the ASAP reports are not protected from discovery by any statutory or regulatory privilege.

### B.      Common Law Privilege

Comair requests that this Court, nonetheless, grant a privilege to the ASAP reports in light of the value of the information provided and the possibility that there might be some chilling effect on voluntary reports.  An initial consideration is whether state or federal law provides the rule of decision in the various cases, as that same law would determine whether or not there might be a privilege.  Federal Rule of Evidence 501[3]; *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 378 n. 7 (W.D. Ky. 2007).  Although most Plaintiffs filed their claims under state law, Comair correctly notes that some Plaintiffs brought their claims under federal law pursuant to the Montreal Convention [DE #1289, pp. 5-6].  Additionally, the Court has not been asked to determine what law provides the rule of decision in these cases.  *See* DE #406, pp. 8-9.  Regardless of whether state or federal law applies, the outcome is the same for a common law or self-critical analysis privilege for ASAP reports.

The United States Supreme Court rejected an argument similar to Comair's regarding a privilege for university peer review reports as follows:  "We are especially reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself.  The balancing of conflicting interests of this type is particularly a legislative function."  *University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 198 (1990) (citation omitted).  This reluctance is in addition to the usual concerns that privileges are in derogation of the search for truth and that there due process implications in withholding demonstrably relevant evidence.  *See Nixon*, 418 U.S. at 710, 712.

---

[3] "[I]n civil actions ..., with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege ... shall be determined in accordance with State law."  FRE 501.

As discussed above, the focus of the legislative protection for ASAP reports is to prevent disclosure to the "public" through FOIA requests.  FAR Part 193 Final Rule. Noting that use of the information for enforcement was of "prime interest" to reporting parties, the FAA designed "enforcement-related incentives" into the program."  AC No: 120-66B.  Those incentives are that FAA enforcement will be limited to administrative action, no action or corrective action, depending upon the circumstances.  *Id.* § 11.b.  Additionally, the contents of an ASAP report will not be used to initiate or support company disciplinary action. 70 J. Air. L. & Com. 83, at 104; AC No: 120-66B; Comair ASAP MOU, § 10.i.  Employees have the additional strong incentive that their voluntary reports are making aviation safer for themselves and their passengers.  *See* DE #1253, p. 2.  In *Dowling v. American Hawaii Cruises, Inc.*, 971 F.2d 423 (9th Cir. 1992), the court considered whether allowing discovery of pre-accident safety reviews would stifle voluntary reporting and said: "[P]re-accident safety reviews are designed to preempt litigation; it is perverse to assume that the candid assessments necessary to prevent accidents will be inhibited by the fear that they could later be used as a weapon in hypothetical litigation they are supposed to prevent."  *Id. at 427*.

Comair relies on the common-law qualified privilege created by *In re Air Crash Near Cali, Colombia on December 20, 1995*, 959 F. Supp. 1529 (S.D. Fla. 1997).  It has been nearly eleven years since that decision, and no other court has relied upon it to create a similar common-law privilege.  This Magistrate Judge, likewise, does not find the *Cali* analysis persuasive.

It is the opinion of this Magistrate Judge that the failure of Congress to create any privilege for ASAP reports weighs heavily against the creation of any privilege by this Court.  The concerns regarding reluctance to report were considered by Congress and the FAA, and the incentives deemed sufficient to protect the program were provided.

### C.   Self-Critical Analysis Privilege

Comair also asks this Court to apply a self-critical analysis privilege to the ASAP reports. No such privilege is available under Kentucky law.  *University of Kentucky v. Courier-Journal & Louisville Times Co.*, 830 S.W.2d 373, 378 (Ky. 1992) ("The University asks the Court to adopt a

11

'self-critical analysis' privilege which would exempt from disclosure self-evaluative documents. We refuse to judicially adopt such a privilege"). Comair argues that the Supreme Court of Kentucky would decide the issue differently if presented with the facts of this case. [DE #1289, p. 8]. This Court is bound by existing law. "Until the [state] courts have spoken on the subject, we must follow the law as it is. We should not attempt to make new law for the state in conflict with its existing decisions." *Goranson v. Kloeb*, 308 F.2d 655, 656-657 (6th Cir. 1962). *See also Angelotta v. American Broadcasting Co.*, 820 F.2d 806, 807 (6th Cir. 1987) (A district court "must apply state law in accordance with the then controlling decision of the state's highest court").

Comair's argument regarding a self-critical analysis privilege also fails under federal law. The *Cali* court was "unpersuaded that the self-critical analysis privilege" applied to ASAP reports. *Cali*, 959 F. Supp. at 1532-33. It particularly noted that the privilege was for "in house" reviews, but not reports send to others like the ASAP reports. *Id.* at 1532 ("unless the report is prepared for *purely* internal review purposes, no self-critical analysis privilege should attach"). That factual distinction also applies to the self-critical analysis privilege recognized for an internal post-accident report in *ASARCO, Inc. v. National Labor Relations Board*, 805 F.2d 194 (6th Cir. 1986). In *United States v. Allison Engine Co., Inc.,* 196 F.R.D. 310 (S.D. Ohio 2000), the court considered a claim of self-critical analysis privilege regarding internal audits of quality control for products supplied to the United States Navy. It applied a four-part test from *Bredice v. Doctors Hosp., Inc.*, 50 F.R.D. 249 (D.D.C. 1970):

> (1) the information must result from self-critical analysis undertaken by the party seeking protection; (2) the public must have a strong interest in preserving the free flow of the type of information sought; (3) the information must be of the type whose flow would be curtailed if discovery were allowed; and (4) no documents should be accorded the privilege unless it was prepared with the expectation that it would be kept confidential.

*Allison Engine*, 196 F.R.D. at 312. The court rejected the privilege in that case, noting that the privilege had rarely been applied and that its very rationale had been called into doubt by *University of Pennsylvania*. *Id.* at 313. Particularly, the court held that the quality control audits failed to meet

the third and fourth tests.  In rejecting that the flow of information would be curtailed by discovery, it noted that abandoning safety reviews would be bad for business and that the documentation may form an affirmative defense to a claim.  *Id.* at 314.  The court also rejected the argument that the documents were created with the expectation that they would remain confidential since the company was required to maintain records of inspections and corrective action and make them available for inspection by the contracting party.  *Id.* at 314-315.

Similarly, the Ninth Circuit reversed a decision that routine, internal self-critical safety reviews on a ship were privileged.  *Dowling*, 971 F.2d at 426.  The court concluded that "such reviews will rarely, if ever, be curtailed simply because they may be subject to discovery."  *Id.*  It noted that the "many incentives" to conduct safety reviews outweigh any harm from disclosure.  Particularly, there "is surely the desire to avoid law suits arising from unsafe conditions."  *Id.*  The court found it noteworthy that automobile manufacturers continue to conduct safety tests despite discovery of a cost-feasibility memorandum that subjected Ford Motor Company to punitive damages.  *Id.*  The court also doubted the claim that the reviews were performed with the expectation that they would be kept confidential.  *Id.*

Comair's claim of a self-critical analysis privilege likewise must fail.  First, the ASAP reports are not prepared for purely internal review.  *Cali* 959 F. Supp. at 1532-33.  They are prepared to be shared with the FAA and the pilots' union.  Second, there are many incentives for reporting to continue, not the least of which is the future personal safety of the crew and passengers.  There is also the desire to prevent lawsuits from unsafe conditions and the possibility of documenting an affirmative defense in the event a lawsuit should arise.  Congress and the FAA considered the need to encourage future reporting and determined that incentives regarding enforcement and company discipline were sufficient.  Courts should be particularly reluctant to recognize a privilege when Congress has chosen not to do so.  *Pennsylvania*, 493 U.S. at 198.  Third, there is no reasonable basis for expecting confidentiality of the ASAP reports when the regulations expressly provide circumstances under which they will be publicly disclosed, and they further authorize disclosure

pursuant to court order. 14 C.F.R. Part 193. This fact distinguishes the conclusion in *Tice v. American Airlines, Inc.*, 192 F.R.D. 270, 273 (N.D. Ill. 2000) that the different reports at issue there "were prepared with the expectation that they would be kept confidential." Accordingly, is it the opinion of this Magistrate Judge that Comair's ASAP reports are not subject to a self-critical analysis privilege or any similar qualified privilege.

###    D.    Substantial need for documents

Relying upon *Cali*, Comair argues that Plaintiffs failed to demonstrate a substantial or compelling need for the documents [DE #1289, p. 8]. There is no heightened burden on Plaintiffs when there is no privilege. Moreover, Plaintiffs here are seeking information that the carrier had notice of safety hazards similar to the ones involved in the crash of Flight 5191. The *Cali* court recognized that "[e]vidence of this sort ... might be vital to its cause of action for willful misconduct." Plaintiffs in the present cases are seeking punitive damages on several grounds. Additionally, Plaintiffs have demonstrated that they were severely handicapped in questioning Mr. Vislosky about specific incidents in ASAP reports when they had no basis for assessing the accuracy of his testimony or his recollection.

###    E.    Motion to Quash Deposition

Comair argues that no deposition of a corporate representative regarding the ASAP reports is necessary since Mr. Vislosky has already been deposed. Without the ASAP reports, Plaintiffs were blindfolded while deposing the witness. Additionally, they are entitled to the benefit of a 30(b)(6) deposition and the "information known or reasonably available to the organization," rather than being limited to Mr. Vislosky's personal knowledge.

## III.    CONCLUSION

**IT IS ORDERED**:

1.    Comair's Motion for a Protective Order and Motion to Quash Deposition [DE #1200] is **DENIED**;

2.      Comair shall immediately produce to Plaintiffs the documents requested in Plaintiffs' November 21, 2007, Notice of Deposition and Request for Production of Documents [DE #1105]; and

3.      Comair shall promptly make a corporate representative available to Plaintiffs for a deposition in accordance with Plaintiffs' November 21 Notice.

This January 17, 2008.

Signed By:

**_James B. Todd_**

**United States Magistrate Judge**

g:/forester/comair/06-316(1288).wpd