UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

**CIVIL ACTION (MASTER FILE) NO. 5:06-CV-316 - KSF**

IN RE: AIR CRASH AT LEXINGTON, KENTUCKY, AUGUST 27, 2006

RELATING TO:  ALL CASES

## OPINION AND ORDER

This matter is before the Court on the motion of Comair, Inc., Comair Services, Inc., Comair Holdings, LLC and Delta Air Lines, Inc. (collectively "Comair") for partial summary judgment on Plaintiffs' claims for punitive damages [DE 2123] and on the motion of Defendant James Polehinke for partial summary judgment on punitive damages [DE 2121].  These motions regarding punitive damages are ripe for consideration.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Comair moved for summary judgment on Plaintiffs' claims for punitive damages arguing that an "employer is vicariously liable for punitive damages only if an employee is grossly negligent and the employer 'authorized or ratified or should have anticipated the conduct in question.'" [DE 2123 Memorandum of Law[1] ("Memo"), p. 2 (quoting KRS 411.184(3)].  First Officer Polehinke also moved for summary judgment claiming that his conduct did not rise to a level that would support punitive damages.  [DE 2121].  In light of the Court's Protective Order Regarding Confidential Information [DE 285] and the lack of clarity at this stage as to what information should be treated as confidential, the Court does not discuss the evidence in detail in this Opinion.

In support of its motion for partial summary judgment on punitive damages, Comair details its operation history, the training of Captain Clay and First Officer Polehinke, general policies

---

    [1] Comair filed its Memorandum of Law under seal, stating it was pursuant to the Court's Protective Order.

regarding hiring and training and various safety programs. Memo, pp. 3-19. Comair argues that the crew's failure to line up and take off from the correct runway was caused in part by confusion associated with the airport construction project and was exacerbated by lighting outages for taxiways, runways and signage and by an understaffed Air Traffic Control tower. *Id.* pp. 19-20.

Comair states it "has accepted responsibility for mistakes made by its crew," but denies that it is liable for punitive damages. *Id.* at 20. It states the taxi briefing was contrary to its standard operating procedures, and that the violations of sterile cockpit procedures were unacceptable. *Id.* at 22. If the pilots failed to follow standard procedures for maintaining situational awareness, Comair says they violated Comair's training and operation manuals. *Id.* at 23. If a jury should determine that the conduct of the pilots constituted gross negligence, Comair argues it would not be liable for punitive damages, because it did not ratify or authorize their actions and had no reason to anticipate that the crew would fail to perform their duties *Id.* It further argues there is no basis for a determination that Comair itself was grossly negligent. *Id.* at 23.

Comair contends it is not liable under theories of negligent hiring, training, or supervision. *Id.* at 32-37. It also argues that it is not liable for punitive damages on Plaintiffs' claims for breach of contract or breach of warranty. *Id.* at 37-38.

Plaintiffs responded that there was "overwhelming" evidence that Comair was grossly negligent in its corporate oversight of its safety program, including detailed reports by Plaintiffs' expert witnesses. [DE 2123,[2] p. 2]. They further argue that reckless operation of the aircraft by a flight crew was a foreseeable consequence of decisions by Comair management. *Id.* at 3.

Additionally, Plaintiffs claim that under Kentucky's wrongful death statute and Section 241 of the Kentucky Constitution, a corporation whose employees cause the death of another through gross negligence is liable for punitive damages. Plaintiffs argue there is overwhelming evidence that Clay and Polehinke acted recklessly and breached their duties as pilots. *Id.* at 4.

---

[2] Plaintiffs' Response was filed under seal.

Plaintiffs further argue that, even if KRS 411.183(4) is applicable to this case, it does not shield Comair from liability for gross negligence of its pilots when the negligent corporate representative is vested with total control of the corporation's responsibility. Plaintiffs argue that a pilot is in the same position as a corporate officer who is in control of corporate activities. *Id.* at 4-5. Finally, Plaintiffs claim that if KRS 411.184(3) is applicable, Comair should have anticipated the reckless conduct of its pilots that resulted in the crash of Flight 5191. *Id.* at 5-6.

Comair replied[3] that Kentucky's wrongful death statute and punitive damages statute can be construed consistently and in conformity with Kentucky's Constitution, and that several cases have applied the punitive damages statute to wrongful death actions. [DE 2454]. It argued that Plaintiffs mischaracterized the conduct of Comair's management. Comair reiterated information regarding the training of pilots, action taken in response to the 2003 Corpus Christi wrong-runway incident, and specific training provided to Mr. Polehinke. Comair contends it had no obligation to comply with various recommendations regarding written procedures for cross checking of runway headings and that it implemented other procedures to ensure safety.

Regarding the failure to have a written policy about takeoffs at night on an unlit runway, Comair notes that it never before had such an event nor is there evidence of industry-wide problems with such takeoffs. Regarding evidence of increasing runway incursions during the preceding twenty-four months, Comair notes that the term is a broad one and there was no evidence of a wrong runway takeoff during that period. It also characterizes as misleading the claim that runway incursions were steadily increasing. Comair takes issue with evidence regarding staffing in Comair's safety departments and notes the testimony of one witness that the position of Manager of Flight Safety did not exist prior to August 30, 2006. Additionally, it claims that the duties were handled by other individuals. It further argues there is no evidence that these staffing decisions were a causative factor in the crash of Flight 5191. Regarding evidence of Polehinke's

---

[3] Comair's Reply was filed under seal.

3

training failures, Comair notes that none involved wrong runway takeoffs. Finally, Comair argues that Plaintiffs have relied on irrelevant evidence, such as boarding the wrong aircraft and non-pertinent conversations at the gate, which were not causative factors in the crash.

In response to First Officer Polehinke's motion, Plaintiffs filed a sealed response detailing several improper procedures and a lack of situational awareness on the part of Polehinke that Plaintiffs claim were causative factors in the crash of Flight 5191. [DE 2347]. In support, they provide multiple exhibits and the reports of four expert witnesses who opine that the conduct of the crew, including Mr. Polehinke, reflected a wanton or reckless disregard for the lives or safety of others.

**II.     ANALYSIS**

    **A.     Summary Judgment Standard**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore*

4

*v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

**B.     The Legal Issue of Corporate Liability for Punitive Damages**

Before determining whether there is sufficient evidence to present a jury question on the issue of punitive damages, the Court will consider under which legal theory, if any, such evidence might be submitted. Plaintiffs argue at least three, distinct legal bases under which Comair may be held liable for punitive damages.

### 1.     Gross Negligence by the Corporation

First, Plaintiffs argue that the conduct of the corporate management of Comair showed a "wanton or reckless disregard for the safety of other persons." *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 52 (Ky. 2003). In *Phelps* a punitive damage award was upheld against Louisville Water Company when a flatbed trailer was parked at a company work site on a closed street in such a manner that two individuals were killed when their car crashed into it. The evidence of gross negligence included that the company circumvented the permitting process by misrepresenting the situation to the Department of Highways; it changed the detour route without notifying proper entities; no traffic control plan was implemented, in violation of its own procedures; no advance warning signs were at the work zone, in violation of uniform traffic control standards; improper barricades were placed at the ends of the work zone; and that less than half of the required buffer zone was left. Based upon this and other instances of misconduct, the court concluded that "the jury could have easily inferred that LWC committed gross negligence, as that term is defined in *Horton [v. Union Light, Heat & Power Co.*, 690 S.W.2d 382 (Ky. 1985)]." *Phelps*, 103 S.W.3d at 52.

In *Thomas v. Greenview Hospital, Inc.*, 127 S.W.3d 663 (Ky. Ct. App. 2004) *overruled in part on other grounds, Lanham v. Commonwealth*, 171 S.W.3d 14, 20 (Ky. 2005), a punitive damages award based on gross negligence of a hospital was affirmed where there was evidence that a patient's death was caused by staff not turning the patient as instructed, an air mattress being delayed for two days, examination by a wound care nurse being delayed, erroneous performance of a skin care assessment, and failure to follow up properly by the wound nurse. *Id.* at 673. In *Sufix, U.S.A., Inc. v. Cook,* 128 S.W.3d 838 (Ky. Ct. App. 2004) a punitive damages award was affirmed based on the gross negligence of a weed trimmer manufacturer for failure to test the plastic cap before releasing the product, for having notice that the plastic cap was rejected in Italy, and for failure to investigate adequately after notice from customers of product failures.

In *Ellis v. Gallatin Steel Co.*, 390 F.3d 461 (6th Cir. 2004), the court affirmed a punitive damage award for gross negligence when one corporation operated a slag processing facility for seven years without sufficient air pollution controls while knowing that its dust created a nuisance, and another corporation "knew dust from its operations drifted onto plaintiffs' land but did not abate the nuisance." *Id.* at 471. In *Clark v. Chrysler Corp.*, 436 F.3d 594 (6th Cir. 2006), the court upheld a punitive damages award, but remanded for remittitur of the amount, based on evidence of Chrysler's gross negligence in designing, manufacturing and marketing a truck with a defective door latch and pillar. *See Clark v. Chrysler Corp.*, 310 F.3d 461, 480-81 (6th Cir. 2002), *cert. granted, judgment vacated by Chrysler Corp. v. Clark,* 540 U.S. 801 (2003). These cases amply demonstrate that, under Kentucky law, a corporation such as Comair may be held liable for punitive damages for its gross negligence.

      2.    <u>Corporate Liability for Wrongful Death Caused by Gross Negligence of a Servant or Agent</u>

Plaintiffs argue that the limitations in Kentucky's punitive damages statute, KRS § 411.184(3), do not apply in this case and that Comair may be liable for punitive damages for the

gross negligence of its pilots.[4]  Kentucky's wrongful death statute, KRS § 411.130(1) expressly authorizes punitive damages against a principal for the gross negligence of its agents or servants.

> Whenever the death of a person results from an injury inflicted by the negligence or wrongful act of another, damages may be recovered for the death from the person who caused it, *or whose agent or servant cause it.*  If the act was willful or the negligence gross, punitive damages may be recovered.

KRS § 411.130(1) (emphasis added).  Section 241 of the Kentucky Constitution provides in part:

> Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death, from the corporations and persons so causing the same.

*Louisville & N.R. Co. v. Kelly's Adm'x*, 19 Ky. L. Rptr. 69, 38 S.W.852 (Ky. 1897), was a wrongful death action brought pursuant to Section 241 of the Kentucky Constitution.  The wrongful death statute was enacted after the accident, but before the appeal.  The court noted that the wrongful death statute "was passed in pursuance of the constitutional provision, and we do not think the legislature thereby intended to do anything except declare the meaning of the constitutional provision...."[5]  *Id.* at 855. The court also interpreted the term "damages" in Section 241 as being used "in its broadest sense" to include both compensatory and exemplary damages. *Id.* at 854.  The facts of the case were that a railroad conductor and an engineer forgot a written order to stop at a certain location to allow another train to pass; instead, they collided with that train. The railroad argued it could not be liable for punitive damages because it was not responsible for the act causing the collision and had properly trained its personnel.  *Id.* at 856. The court rejected that argument and held the railroad liable for the gross negligence of its engineer and conductor.

Punitive damages based on vicarious liability were also upheld in *Illinois C. R.Co. v. Josey's Adm'x*, 22 Ky.L.Rptr. 1795, 61 S.W. 703, 705 (Ky. 1901) ("The administratrix was entitled to

---

[4]  KRS § 411.184(3) provides:  "In no case shall punitive damages be assessed against a principal or employer for the act of an agent or employee unless such principal or employer authorized or ratified or should have anticipated the conduct in question."

[5]  The relevant portion of Kentucky's 1984 wrongful death statute is virtually the same as KRS § 411.130(1).  *Cf.* Kentucky Statute Chapter 1, Section 6 (1894).

7

compensatory damages if the death resulted from negligence, and to punitive damages if it was the result of gross negligence"); *Smith's Adm'x v. Middleton*, 23 Ky.L.Rptr. 2010, 66 S.W.388, 389 (Ky. 1902)(court erred in not giving punitive damage instruction against druggist for clerk's dispensing of wrong drug, which resulted in death of a child); *Continental Ins. Cos. v. Hancock,* 507 S.W.2d 146, 151 (Ky. 1974)("punitive damages may be assessed against a master for the wrongdoing of his servant even though the master was in no way a wrongdoer"); *Thomas v. Greenview Hospital, Inc.*, 127 S.W.3d 663 (Ky. 2004) *overruled on other grounds in Lanham v. Commonwealth,* 171 S.W.3d 14, 20 (Ky. 2005), (hospital liable for punitive damages based on conduct of its staff). In *Williams v. Wilson*, 972 S.W.2d 260 (Ky. 1998), the court reviewed several cases surrounding the adoption of the Constitution and said:

> Older cases, a number of which pre-date our constitution recognize and approve the award of punitive damages in addition to compensatory damages against corporations and other employers based on gross negligence of their employees.

*Id.* at 263 (quoting *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 388 (Ky. 1985).

*Williams* declared KRS § 411.184(1)(c) unconstitutional because it required subjective awareness of malice, which conflicted with the jural right to bring a common law action for gross negligence.[6] *Williams,* 972 S.W.2d at 262. Comair correctly argues that a wrongful death action was not a jural right. *Illinois Central R. Co.*, 61 S.W. at 705 ("It is only by virtue of the constitution and the statute that there can be a recovery of damages for the loss of life occasioned by negligence"). This Court disagrees, however, with Comair's contention that "Section 241 and KRS 411.130 do not authorize imposing punitive damages on an employer via vicarious liability or *respondeat superior*." [DE 2454, p. 14]. As several of the above cases illustrate, particularly *Louisville & N. R. Co.,* Section 241 and KRS § 411.130 do just that.

---

[6] Comair erroneously contends that the constitutional infirmity was a limitation on "the amount recoverable in a wrongful death action." [DE 2454, p. 15]. That is not what the court held; moreover, *Williams* was not a wrongful death action.

8

Plaintiffs argue that the wrongful death statute, KRS § 411.130(1), which allows punitive damages against a principal for the gross negligence of a servant, clearly conflicts with the punitive damages statute, KRS § 411.184(3), which severely limits the imposition of punitive damages against a principal or employer. "One of the established rules of statutory construction is that when two statutes deal with the same subject matter, one in a broad, general way and the other specifically, the specific statute prevails." *Land v. Newsome*, 614 S.W.2d 948 (Ky. 1981). *See also Withers v. University of Kentucky*, 939 S.W.2d 340, 345 (Ky. 1997). The punitive damages statute deals generally with punitive damages. The wrongful death statute deals specifically with damages for wrongful death caused by gross negligence.

This Court is aware of the legislative attempt to nullify existing statutory or case law through KRS § 411.184(5), which states: "This statute is applicable to all cases in which punitive damages are sought and supersedes any and all existing statutory or judicial law insofar as such law is inconsistent with the provisions of this statute." A statute, however, cannot negate rights granted by the Constitution. *Commonwealth v. O'Harrah*, 262 S.W.2d 385, 389 (Ky. 1953) ("Constitutional provisions, whether operating by way of grant or limitation, are to be enforced according to their letter and spirit, and cannot be evaded by any legislation which, though not in terms trespassing on the letter, yet in substance and effect destroy the grant or limitation.").

It is the opinion of this Court that the specific wrongful death statute prevails over the general punitive damages statute. Under KRS § 411.130(1), punitive damages may be imposed on an employer for the gross negligence of a servant.

This Court is aware that the punitive damage statute was presumed applicable in the following wrongful death cases: *Reffitt v.* Hajjar, 892 S.W.2d 599, 607 (Ky. Ct. App. 1994) (no evidence physician was grossly negligent and ignored patient because she was a welfare patient); *Estate of Presley v. CCS of Conway*, 2004 WL 1179448 (W.D. Ky. 2004) (no evidence either truck driver's employer should have anticipated the accident); and *Estate of Embry v. Geo Transportation*

9

*of Indiana, Inc.*, 478 F. Supp.2d 914, 921 (E. D. Ky. 2007) (truck driver choking on coffee and losing control of vehicle is not gross negligence). None of those courts considered, and presumably were not asked to consider, the specific right to punitive damages under the wrongful death statute or the Kentucky Constitution.

Plaintiffs argue, alternatively, that KRS § 411.184(3) does not apply to this case because Clay and Polehinke were in total control of the aircraft and, as such, were acting as Comair, rather than as employees. This Court agrees with Comair that this interpretation creates an unwarranted and overly broad exception.

> 3. Corporate Liability Under KRS § 411.184(3) Because Gross Negligence by Agents or Employees Should Have Been Anticipated

Plaintiffs argue that, even if KRS § 411.184(3) applies to this wrongful death action, Comair may be held liable for punitive damages because the conduct of the pilots should have been anticipated. Comair argues that it may not be held liable for failure to anticipate conduct unless the employee "'exhibited a pattern of conduct similar to the alleged gross negligence' such that the employer 'should have reasonably expected the conduct to recur.'" [DE 2123 Memo, p. 27]. It relies on *Jones v. Blankenship*, 2007 WL 3400115 (E.D. Ky. 2007), *McGonigle v. Whitehawk*, 481 F. Supp.2d 835 (W. D. Ky. 2007); *Estate of Presley v. CCS of Conway*, 2004 WL 1179448 (W.D. Ky. 2004); and *Kentucky Farm Bureau Mut. Ins., Co. v. Troxell*, 959 S.W.2d 82 (Ky. 1998). Comair admits that the identical conduct need not have been anticipated. [DE 2454, p. 17]. It argues, however, that the employees must have engaged in "similar gross misconduct."

The earliest case on which Comair relies is *Troxell* in which the court was addressing the admissibility of evidence of prior litigation involving the same insurance adjuster. The court simply noted the evidence that Farm Bureau was aware this adjuster handled claims in an unacceptable manner and had knowledge of the agent's pattern of conduct was "relevant" to a claim for punitive damages under the statute. The Supreme Court of Kentucky has not said such proof is "required."

10

The next case, *Estate of Presley,* involved a truck driver who crossed the median into oncoming traffic and jackknifed. Presley hit that truck and was then crushed by another truck hitting him from behind. In deciding whether the employer could be liable for punitive damages, the court relied on *Troxell*, on another case in which the employer authorized the conduct, and on several employment cases which the court found conflicting. *Estate of Presley*, 2004 WL 1179448 at *4. The court concluded that "Plaintiffs have offered no evidence that either employer should have anticipated the accident." *Id.*

*McGonigle*, another trucking accident, involved a driver who was acting completely outside the scope of his employment when he rammed a vehicle at a traffic light. *Id.* at 839-841. For this reason alone, the employer was not liable for the employee's gross negligence. *Id.* at 841. In dicta, the court then assumed the employee was acting within the scope of his employment and relied on *Troxell* for the absence of any pattern of drunk driving during the term of employment so as to hold the employer liable.

The last trucking accident cited by Comair, *Jones*, relies on *Presley* and *McGonigle* to again focus on the individual employee's conduct and the absence of "a pattern of grossly negligent conduct" during the time of employment such that the employer should have anticipated "the grossly negligent act." *Jones*, 2007 WL 33400115 at *4.

Plaintiffs distinguish these cases because the employer's conduct in training, supervising and instructing the employees or agents was never in issue. [DE 2123, p. 49]. In the present case, Plaintiffs offer evidence of Comair's knowledge of prior incidents of flight crews, including one of Comair's crews, taking off from the wrong runway; of a failure to adopt safety related procedures such as a written checklist requirement to cross check a runway heading; and of similar disregard on the part of Comair. There was evidence that Comair did not require pilots to look at their instruments to verify runway headings. [DE 2123, Ex. 21]. There also was no policy prohibiting pilots from taking off at night on an unlit runway. [Ex. 19]. Distribution of NOTAMs to pilots was

discretionary, rather than a standardized system. [Ex. 26]. It is the opinion of this Court that these and other additional circumstances with the expert testimony in support are sufficient to raise a jury question as to whether Comair should have anticipated the conduct of its pilots.

        4.      <u>Punitive Damages for Breach of Contract or Breach of Warranty</u>

Comair argues that punitive damages may not be based on Plaintiffs' claims of breach of contract or breach of warranty under Kentucky law. [DE 2123, p. 37]. Plaintiffs did not respond to this argument, presumably because no such claim is being made.

    **C.**    **Sufficiency of the Evidence**

        1.      <u>Evidence of Comair's Gross Negligence</u>

Plaintiffs point to Comair's knowledge that runway incursions were a well known threat to aviation safety for many years, to an NTSB recommendation that airlines require pilots to cross-check heading indicators when lined up for takeoff, to 114 reported incidents between 1988 to 2005 in which flight crews attempted takeoffs from the wrong runway, to a Comair crew taking off from the wrong runway in 2003, and to an FAA Advisory Circular in 2003 recommending flight crews check compass headings. Despite this knowledge, Plaintiffs note that Comair did not have a written requirement for pilots to verify runway headings. Plaintiffs also point to the absence of a policy regarding taking off at night on an unlit runway and the lack of knowledge on the part of pilots regarding this issue. There was evidence that the conduct of the pilots on this flight was normal and not extraordinary. [De 2123, Ex. 2]. This Court will not detail additional evidence offered by Plaintiffs on this subject, but notes that Plaintiffs offer several expert witnesses who give examples of Comair practices that reflected a reckless disregard for safety. It is the opinion of this Court that Plaintiffs have demonstrated a genuine issue of material fact for the jury as to the gross negligence of Comair.

2. <u>Evidence of Gross Negligence by Clay and Polehinke</u>

In addition to multiple exhibits, Plaintiffs offer the reports of four expert witnesses with substantial piloting credentials and experience who detail numerous incidents that, cumulatively, present a jury question of gross negligence on the part of Captain Clay and First Officer Polehinke, as well as Comair. For example, the Captain was required to perform a full taxi briefing; instead First Officer Polehinke provided an incomplete and inadequate taxi briefing. Both pilots violated federal regulations and Comair Operations Manual by engaging in non-essential conversation while taxiing. The pilots failed to notice or to utilize numerous signs, charts, markings and indicators that would have led them correctly to Runway 22. The pilots failed to synchronize the heading bugs with the direction of the runway when they were aligned with the departure runway. They failed to observe the "26" painted on the pavement as the aircraft made its turn. The pilots failed to notice the width of Runway 26 was only 75 feet, rather than Runway 22's 150 foot width. They failed to notice that they were crossing Runway 22 with full edge lights, whereas Runway 26 had no edge lights. They failed to notice the red sign with white numbers indicating that Runway 22 is ahead. When First Office Polehinke noted "dat is weird with no lights," no attempt was made to abort the takeoff. These are but a few of the incidents relied upon by Plaintiffs and their experts to demonstrate gross negligence. *See* DE 2121, Exhibits 27-30. It is the opinion of this Court that Plaintiffs have demonstrated there is a genuine issue of material fact for the jury as to whether the crash of Flight 5191 and the resulting deaths were caused by the gross negligence of Comair and/or its pilots, including First Officer Polehinke.

**D.    Summary Judgment on Claims of Negligent Hiring, Training, Supervision**

Buried in Comair's "Motion for Partial Summary Judgment on Plaintiffs' Claims for Punitive Damages" is an unrelated argument that it is entitled to Summary Judgment on claims of negligent hiring, training and supervision. [DE 2123, pp. 32-37]. The Court completely overlooked this argument on first reading, and it appears to have been overlooked by the parties, as well, since it

is not briefed in Plaintiffs' Response, and there is no mention of any concession in Comair's Reply. The Court's decisions in this important case should be based on the merits, rather than potential oversight. This motion will be passed at this time. Any response by Plaintiffs must be filed on or before June 13, 2008, and any reply by Comair filed by June 19, 2008.

### III.    CONCLUSION

The Court, being otherwise fully and sufficiently advised, **HEREBY ORDERS**:

A.  Comair's Motion for Partial Summary Judgment to Exclude Punitive Damages [DE 2123] is **DENIED**;

B.  Comair's Motion for Summary Judgment on Claims of Negligent Hiring, Training and Supervision is **PASSED** pending any Response to be filed by June 13, 2008, and any Reply to be filed by June 19, 2008.

C.  First Officer Polehinke's Motion for Partial Summary Judgment on Punitive Damages [DE 2121] is **DENIED**.

This June 6, 2008.

Signed By:

*Karl S. Forester* KSF

**United States Senior Judge**