UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

**CIVIL ACTION (MASTER FILE) NO. 5:06-CV-316 - KSF**

IN RE: AIR CRASH AT LEXINGTON, KENTUCKY, AUGUST 27, 2006

RELATING TO:  ALL CASES

## OPINION AND ORDER

This matter is before the Court on the motion of the United States of America to exclude from evidence at trial various safety recommendations of the National Transportation Safety Board ("NTSB").  Having been fully briefed, this matter is ripe for consideration.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The crash of Comair Flight 5191 on August 27, 2006 was investigated by the NTSB, and its Report was disclosed in a Public Meeting July 26, 2007.  The parties acknowledge that 49 U.S.C. § 1154(b) prohibits the use of a report of the Board in civil actions as follows:  "No part of a report of the Board, related to an accident or an investigation of an accident, may be admitted into evidence or used in a civil action for damages resulting from a matter mentioned in the report." By regulation, the NTSB divides its reports into two groups:  (1) "factual" reports from its investigators and (2) analytical reports containing the Board's determinations, which may include the probable cause of an accident.  The latter may not be used as evidence, but the NTSB "does not object to ... admission in litigation of factual accident reports."  49 C.F.R. § 835.2.  The United States argues here that safety recommendations issued by the NTSB are encompassed within the prohibition against use of reports because they contain the determinations and conclusions of the Board.  In support, they attach a letter from the General Counsel of the NTSB that states in part: "The NTSB opposes any use of NTSB safety recommendations in civil actions for damages."  "It has been the NTSB's long-standing position that safety recommendations are covered by the

statutory prohibition against the use or admission of NTSB reports." [DE 2648, Ex. C]. Accordingly, the United States seeks to exclude evidence of Safety Recommendations A-00-67 and A-00-68 relating to runway incursions and A-07-30 relating to air traffic controller fatigue.

Plaintiffs oppose this motion, arguing that the Board's own definition of "Board accident report" does not include safety recommendations. They note that 49 C.F.R. § 835.2 defines Board accident report as "the report containing the Board's determinations, including the probable cause of the accident, issued either as a narrative report on in a computer format." [DE 2894, p. 2]. They argue that safety recommendations are not concerned with the cause of any particular accident, but how to prevent future accidents. "As such, they often do not determine a specific cause(s) of a specific accident and, as such, do not usurp the jury's role as cause determiner." *Id.* Plaintiffs claim that the statute and regulation do not address the admissibility of safety recommendations. They argue that legislative intent must be determined from the plain language of the statute, and there should be no further analysis when the language is clear. Accordingly, they urge there should be no interpretation after noting the definition of "Board accident report."

Plaintiffs argue that two of the safety recommendations that the United States seeks to exclude pre-date the crash of Comair Flight 5191. They seek to distinguish the authorities relied upon in the motion as all involving the subject crash as part of the report or recommendation. They further argue that some safety recommendations, such as A-89-74 which recommends cross-checking the heading indicator to the assigned runway before takeoff, are relevant evidence that put carriers on notice about the safety hazard post by wrong runway takeoffs. Because they precede the subject accident, Plaintiffs argue these recommendations do not usurp the jury's role and are admissible. They further argue that Safety Recommendations A-07-30 through -32. which do post-date the Comair 5191 crash and mention it specifically, do not set out the probable cause determination of the NTSB and, thus, do not usurp the jury's role. [DE 2894].

**II.    ANALYSIS**

The motion of the United States presents a question of statutory construction. The case of *Chiron Corp. and Perspective Biosystems, Inc. v. National Transportation Safety Board*, 198 F.3d 935 (D.C. Cir. 1999) is enlightening on the issue of whether portions of an NTSB report are admissible. The opinion begins with an overview of the unique function of the NTSB:

> NTSB is a uniquely independent federal agency responsible for investigating airplane accidents, determining the probable cause of accidents, and making recommendations to help protect against future accidents. *See* 49 U.S.C. §§ 1131, 1132, 1135 (1994). NTSB neither promulgates nor enforces any air safety regulations. Nor does the agency adjudicate claims over liability for accidents. Rather, it simply analyzes accidents and recommends ways to prevent similar accidents in the future.

*Id*. at 937. It quotes the statutory prohibition against admission of Board reports and says:

> The simple truth here is that NTSB investigatory procedures are not designed to facilitate litigation, and Congress has made it clear that the Board and its reports should not be used to the advantage or disadvantage of any party in a civil lawsuit. In our view, this congressional mandate could not be clearer.

*Id.* at 940.

Regarding the earlier cases holding that the "factual findings" of a Board report were admissible, the court said closer scrutiny showed that those cases focused only on admissible "investigators' reports" which were mislabeled as "reports of the Board." The court noted the response of the Board to avoid further confusion through an amended regulation:

> When faced with the judiciary's literal distortion of the statute, the Board, in 1975, responded by amending its regulations to make clear that investigators' reports – the very reports that some courts were already admitting – are not "reports of the Board" for the purpose of § 1154(b). Section 835.2 defines the Board's accident report as "the report containing the Board's determinations, including the probable cause of an accident." 49 C.F.R. § 835.2 (1998). No part of this report "may be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such reports." *Id.* (using almost the exact language of 49 U.S.C. § 1154(b)). A "factual accident report," on the other hand, is "an investigator's report of his investigation of the accident." *Id.* Because this report is not a "report of the Board," it is not barred by the statute and is therefore admissible.

*Id.* Thus, victims, who are usually excluded from NTSB investigations, "have access to necessary factual information" through the investigators' reports. *Id*. at 941. The court agreed with and quoted a recent Tenth Circuit decision that said: "Consistent with its fact-finding mission that is litigation neutral, NTSB reports are barred as evidence in court." *Id.* (quoting *Thomas Brooks v. Burnett*, 920 F.2d 634, 639 (10th Cir. 1990)). Finally, the court noted that "admitting Board reports into civil litigation can have the unsavory effect of embroiling NTSB in the interests of civil litigants." *Id.*

The United States relies on *McCandless v. Beech Aircraft Corp.*, 697 F.2d 1156 (D.C. Cir. 1983) as reflecting its long-standing position that safety recommendations are within the scope of the prohibition in 49 U.S.C. § 1154(b) against admitting Board reports. In that case, Beech issued a subpoena for the deposition of an NTSB employee who analyzed data from seven Beech aircraft crashes. As a result of this analysis, the NTSB and issued safety recommendations regarding alleged design flaws in the aircraft. Beech sought to discredit the recommendations in the event that they might be used by the estate of a crash victim litigating against Beech in Texas. On appeal from an order quashing the subpoena, the NTSB argued that the statutory prohibitions against admission "cover safety recommendations, not just probable cause reports." *Id.* at 1158. In dicta, the court said:

> There is much to be said for the NTSB's argument that entangling the agency in civil trials through introduction of safety recommendations is little different from doing so through introduction of probable cause reports.

*Id.* at 1159. Because the same issue was pending in the Texas District Court through Beech's motion in limine and there was a potential for inconsistent results or prejudice, the D.C. Circuit suspended the appeal until the Texas court could decide the question.

The Sixth Circuit has considered the admissibility of NTSB reports only briefly and did so in an unusual context. *Hickson Corp. v. Norfolk Southern Railway Co.*, 124 Fed. Appx. 336 (6th Cir. 2005). There, the railroad introduced a letter from the then-Director of the NTSB praising

4

Norfolk Southern for its conduct in responding to a railcar spill and cleaning up. The shipper of the spilled acid rebutted this evidence by introducing certain factual portions of the NTSB report that were critical of the railroad's response. The Sixth Circuit said: "Clearly, it would have been better for neither the Hall letter nor the Board report to come before the jury. Both should have been excluded." *Id.* at 341. Nonetheless, the court held that Norfolk Southern invited any error in admitting the report by opening the door with the Hall letter. *Id.* at 341-42. Citing *Chiron*, the court said the "primary thrust behind the statute ... is to exclude reports that express agency views as to the probable cause of the accident, a finding that should be the province of the jury or factfinder." *Id.* at 340. It is noteworthy, however, that the documents the Sixth Circuit said should have been excluded did not appear to contain any probable cause determination.

One other court has considered the specific issue before this court – whether safety recommendations are admissible under § 1154(b). *In re Jacoby Airplane Crash Litigation*, 2007 WL 2746833 (D. N.J. 2007). The safety recommendation in *Jacoby* discussed six different accidents or incidents during a three-year period, including the *Jacoby* accident. In it, the NTSB developed suggestions for changes in air traffic controller training and procedures. After reviewing the statute and regulations, the court summarized "that an individual investigator's factual report is admissible, but a report by the full Board is not admissible, in whole or in part." *Id.* at *9. It continued:

> Accordingly, for purposes of the Government's instant motion, the Court must determine whether the 2001 Safety Recommendation is a report of the Board or an investigator's report. The answer is simple and unequivocal: It is a report of the Board, signed by the Acting Chairman and concurred with by three other members of the NTSB.

*Id.* The court distinguished several cases allowing factual portions of reports into evidence, finding the reasoning of the *Chiron* court more persuasive. *Id.*

In addition the reasoning of these decisions, this Court should consider the impact of the May 20, 2008 letter from the General Counsel of the NTSB stating, "[i]t has been the NTSB's long-

5

standing position that safety recommendations are covered by the statutory prohibition against the use or admission of NTSB reports." The Sixth Circuit recently discussed deference to agency interpretations in *City of Cleveland v. Ohio*, 508 F.3d 827 (6th Cir. 2007). Where Congress explicitly delegated rule-making authority to an administrative agency, regulations promulgated pursuant to that authority are given "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 843 (quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984)). "However, '[i]nterpretations such as those in opinion letters – like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law – do not warrant *Chevron*-style deference.'" *Id.* quoting *Christensen v. Harris County*, 529 U.S. 576, 587 (2000). "Instead, interpretations contained in formats such as opinion letters are 'entitled to respect' under our decision in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), but only to the extent that those interpretations have the 'power to persuade.'" *Christensen* at 587. "In addition, an agency's interpretation of its own ambiguous regulations is entitled to deference." *City of Cleveland*, 508 F.3d at 844.

     Applying these authorities to the facts of the present case, it is the opinion of the Court that the NTSB's long-standing interpretation of 49 U.S.C. § 1154(b) to preclude admission of safety recommendations is entitled to some deference and is persuasive. While Plaintiffs are correct that the agency's regulation does not explicitly include safety recommendations in the definition of "Board accident report," the statutory language reflects an intent to encompass within the statute more than just the probable cause determination. The statute precludes admission of any "part of a report of the Board, related to an accident or an investigation of an accident." The safety recommendations at issue here were issued on Board stationery, concurred in by all members of the Board, and signed by the Board Chairman. *See* DE 2648, Exs. A, B. These safety recommendations arose out of and are related to the investigation of one or more accidents. In

6

fact, Safety Recommendations A-07-30 through -32 post-date and specifically reference the crash of Comair flight 5191.

The NTSB regulation relating to testimony of Board employees references "Congress' 'strong * * * desire to keep the Board free of the entanglement of such suits'" and "to ensure that the Board does not exert an undue influence on litigation." 49 C.F.R. § 835.3. These purposes may be secondary to the primary purpose of excluding "agency views as to the probable cause of the accident," but they are still important considerations. Admitting reports of the NTSB with safety recommendations that are directly related to issues between the parties would surely "exert an undue influence on litigation." The court in *Chiron* emphasized that the reports of the Board "should not be used to the advantage or disadvantage of any party in a civil lawsuit." *Chiron*, 198 F.3d at 940. From the standpoint of entangling the agency in civil suits, there is little difference between introduction of safety recommendations or probable cause reports. *See McCandless*, 697 F.2d at 1159. Accordingly, it is the opinion of this Court that safety recommendations of the NTSB are encompassed within the meaning of "a report of the Board, related to an accident or an investigation of an accident" that is inadmissible in a civil action for damages pursuant to 49 U.S.C. § 1154(b).

### III.   CONCLUSION

The Court, being otherwise fully and sufficiently advised, **HEREBY ORDERS** that the motion of the United States to exclude safety recommendations of the NTSB from trial [DE 2984] is **GRANTED**.

This July 18, 2008.



**Signed By:**
*Karl S. Forester* KSF
**United States Senior Judge**