UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

**CIVIL ACTION (MASTER FILE) NO. 5:06-CV-316 - KSF**

IN RE: AIR CRASH AT LEXINGTON, KENTUCKY, AUGUST 27, 2006

RELATING TO:  ALL CASES

## OPINION AND ORDER

This matter is before the Court on the motions *in limine* of Comair, Inc., Comair Services, Inc., Comair Holdings, LLC, and Delta Air Lines, Inc. ("Comair") to exclude the testimony of expert witnesses Donald Sommer [DE 2542], Barry Schiff [DE 2543], Tim Olmsted [DE 2682, sealed], Cecil Ewell, and Michael Fortune [DE 2551, sealed].  The United States [DE 2853] and the Plaintiffs' Steering Committee [DE 2897] having responded to same, these motions are ripe for review.

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Comair's Motions in Limine are based upon several repetitive themes that may be addressed collectively.  Comair argues that the testimony of these expert witnesses (1) does not satisfy the scientific requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.* and Federal Rule of Evidence 702; (2) the testimony does not exceed the ordinary, common sense of the jury; (3) the testimony includes legal conclusions; and (4) the testimony improperly includes opinions regarding a defendant's mental state.  For these reasons, they argue that the proffered expert testimony of each of these witnesses must be excluded.

**II.    ANALYSIS**

    **A.    Rule 702 and the Standards in *Daubert* and *Kumho Tire***

As amended in 2000, Rule 702 of the Federal Rules of Evidence states the requirements for admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Generally, this rule "should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact."  *Morales v. American Honda Motor Co., Inc.*, 151 F.3d 505, 516 (6th Cir. 1998).

"[U]nder the Rules, the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).  The court continued:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.  This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts at issue.

*Id*. at 592-93.  The proponent of expert testimony must prove by a preponderance of the evidence that the testimony is reliable, not that it is scientifically correct.  *Id*. at 593; Fed. R. Evid. 104(a).

In determining whether to admit or exclude proffered expert testimony, the court must act as a "gatekeeper" to ensure that the expert is duly qualified to render an expert opinion, that his testimony will assist the trier of fact, and that the proffered testimony is reliable.  *Id*.  However, the court's gatekeeper role under *Daubert* "is not intended to supplant the adversary system or the role of the jury."  *Allison v. McGhan*, 184 F.3d 1300, 1311 (11th Cir. 1999).  *See also United States v. 14.3 Acres of Land Situated in LeFloure County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996)

2

(The Court is mindful that its "role as gatekeeper is not intended to serve as a replacement for the adversary system"). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." *Daubert*, 509 U.S. at 596.

In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court clarified that this "gatekeeper" function applies to all expert testimony, not just scientific testimony. *Id*. at 147 (explaining that Rule 702 makes "no relevant distinction between 'scientific' knowledge and 'technical' or 'other specialized' knowledge. It makes clear that any such knowledge might become the subject of expert testimony"). The Supreme Court provided a checklist for assessing the reliability of expert testimony. This list of "specific factors" "neither necessarily nor exclusively applies to all experts or in every case." *Id*. at 141. Listed considerations include whether an expert's theory can be tested, "whether the theory or technique has been subjected to peer review and publication," "the known or potential rate of error," and "general acceptance." *Daubert*, 509 U.S. 593-94. Yet, the "list of factors was meant to be helpful, not definitive" and will vary from case to case. *Kumho Tire*, 526 U.S. at 151. *See also Daubert*, 509 U.S. at 594 ("The inquiry envisioned by Rule 702 is, we emphasize, a flexible one."). Thus, the trial court must use its discretion in determining whether reasonable criteria of reliability were used by a proffered expert and whether the proposed testimony meets those criteria. Nevertheless, "[t]he Rule's basic standard of relevance ... is a liberal one." *Daubert*, 509 U.S. at 587. The trial court's gatekeeping role does not permit it to reject admissible expert testimony.

In 2000, Rule 702 was amended in response to *Daubert* and cases applying it, such as *Kumho Tire*. It affirms the trial court's role as gatekeeper and provides general standards for the trial court to use to assess the reliability and helpfulness of proffered expert testimony. Advisory Committee Notes to Rule 702. In fact, the advisory comments to the 2000 amendments to Rule 702 noted that "[a] review of the case law after Daubert shows that the rejection of expert testimony

3

is the exception rather than the rule." Advisory Committee Comments to the 2000 Amendments to Rule 702.

### B. Expert Testimony Is Not Excludable Simply Because It Is Not Subject to Scientific Testing.

Comair asserts that testimony from various experts must be excluded because they did not perform scientific tests, apply mathematical formulas, or use other technical means to reach their conclusions concerning the acts and omissions of the flight crew and airline. This reading of *Daubert* ignores the impact of *Kumho* and the language of Rule 702. An expert may testify regarding "technical or other specialized knowledge." Rule 702; *Kumho*, 526 U.S. at 147.

In *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288 (6th Cir. 2007), the court explained as follows:

> *Daubert* itself set forth a list of non-exhaustive factors to guide district courts in assessing reliability. However, district courts need not adhere to those enumerated factors, as "[t]he inquiry ... is a flexible one." *Id*. at 594. Indeed, "the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire*, 526 U.S. at 142 (*citing Joiner*, 522 U.S. at 143). As this Court has observed, where non-scientific expert testimony is involved, "the [*Daubert*] factors may be pertinent," or "the relevant reliability concerns may focus upon personal knowledge or experience." The gatekeeping inquiry is context-specific and "must be tied to the facts of a particular case."

*Id.* at 295.

Comair's authority of *Hayes v. MTD Products, Inc.*, 518 F. Supp.2d 898 (W.D. Ky. 2007) is readily distinguishable. There, an attorney, who was not an engineer and who had only generic experience serving on a Consumer Product Safety Commission, sought to testify that a lawnmower manufacturer defectively designed its product and disregarded customer safety by marketing its product without a rollover protection system/structure. The attorney admittedly was not an expert on riding lawnmowers or this type of lawnmower. Finding that the proposed expert was a "quintessential expert for hire," the court held there was no objective proof, such as his familiarity with the particular type of machine in question, to support the reliability of his testimony. *Id.* at 901.

By contrast in the present case, the proposed experts all have extensive backgrounds and experience in the aviation industry. Similar criticism of experts who are not testifying in the area of the "hard" sciences was addressed by the Sixth Circuit as follows:

> The distinction between scientific and nonscientific expert testimony is a critical one. By way of illustration, if one wanted to explain to a jury how a bumblebee is able to fly, an aeronautical engineer might be a helpful witness. Since flight principles have some universality, the expert could apply general principles to the case of the bumblebee. Conceivably, even if he had never seen a bumblebee, he still would be qualified to testify, as long as he was familiar with its component parts.
>
> On the other hand, if one wanted to prove that bumblebees always take off into the wind, a beekeeper with no scientific training at all would be an acceptable expert witness if a proper foundation were laid for his conclusions. The foundation would not be related to his formal training, but to his firsthand observations. In other words, the beekeeper does not know any more about flight principles than the jurors, but he has seen a lot more bumblebees than they have.

*Berry v. City of Detroit*, 25 F.3d 1342, 349-50 (6th Cir. 1994).

Similarly, in *Wellman v. Norfolk and Western Ry. Co.*, 98 F. Supp.2d 919 (S.D. Ohio 2000), the plaintiff's expert proposed to testify, based only upon his experience and specialized knowledge of the railroad industry, about the proper and safe maintenance of a railroad yard with respect to debris dropped from loaded cars. *Id.* at 925, 927. The district court rejected the *Daubert* challenge as follows:

> In this case, the proffered expert, Walter C. Rockey, is not a scientist, nor is he an engineer. He does, however, have extensive experience in the railroad industry, as an employee, supervisor and government inspector. His proposed testimony is not based upon scientific evidence, is not subject to the traditional definition of peer review, and is not based upon verifiable and repeatable tests. Nonetheless, as *Kumho Tire* makes clear, the four-part *Daubert* test is flexible and is in no way a definitive checklist which must be met before the trial court, as gatekeeper, may admit the testimony.

*Id.* at 925. *See also In re Jacoby Airplane Crash Litigation*, 2007 WL 5037683 at *37 (D.N.J. 2007) ("[P]iloting is not a hard science like toxicology where such criticisms are germane. Instead, it is based on the observations and experience of the pilot expert."). The experts proffered here by Plaintiffs and by the United States are similarly qualified by their extensive experience in the aviation industry to testify on the subjects proposed, as discussed below.

5

### C. The Testimony of the Proposed Experts Will Assist the Jury

Comair claims that the proposed expert testimony should be excluded because it is based only on "ordinary, common sense." The Court disagrees. The Plaintiffs and the United States are claiming that the flight crew and airline management did not adhere to the standards of care of professional airline pilots and licensed air carriers. These are not matters of ordinary, common sense. Comair's authority of *Kenton County Public Parks Corp. v. Modlin*, 901 S.W.2d 876, 881 (Ky. Ct. App. 1995), regarding the placement of a rope on a golf course, is not comparable. Additionally, Kentucky substantive law requires expert testimony to establish the standard of care for a licensed professional unless the negligence is so apparent that a lay person would have no difficulty recognizing it. *Baptist Health Care Systems, Inc. v. Miller,* 177 S.W.3d 676, 680-81 (Ky. 2005).

The jury does not have the specialized knowledge of aviation rules, procedures, training and standards that impacted the pilots' performance. For example, expert testimony will assist in understanding ATIS announcements, NOTAMs, taxiway and runway signs, runway widths, readings of instruments and the impact of each of these on pilot decision making. Expert testimony will assist their understanding of regulations prohibiting non-pertinent conversation during certain phases of flights. The experts' substantial experience will assist in the jury's understanding of the many factors that Comair claims contributed to pilot confusion prior to the crash. The testimony will also assist the jury in understanding the management standards for properly hiring, training, and supervising pilots. Comair's motion in this regard is not well taken.

### D. Plaintiffs' and the United States' Experts Satisfy Rule 702 Requirements

#### 1. Donald Sommer

Mr. Sommer is a mechanical engineer with FAA pilot ratings as Airline Transport Pilot, Commercial Pilot, Flight Instructor, Ground Instructor and Airframe and Powerplant Mechanic. [DE 2897, pp 10-11]. He holds an FAA Inspection Authorization, has over 16,000 hours as a pilot-in-

6

command, has been an owner and operator of aircraft maintenance facilities and flight schools, and has been a manager of an airport. He has investigated thousands of aircraft accidents, a portion of which were Part 121 commercial air disasters. *Id.* He has testified as an accident reconstruction expert in aircraft crash cases. *See Datskow v. Teledyne Continental Motors Aircraft Products*, 826 F. Supp. 677, 682 (W.D.N.Y. 1993) (Donald Sommer's testimony as an accident reconstruction expert was admissible under *Daubert* in this plane crash case); *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 530 F. Supp.2d 216, 220 (D.D.C. 2008) (Donald Sommer testified as an expert on aviation accident analysis and aircraft accident reconstruction); *Bishop v. New Piper Aircraft, Inc.*, 2006 WL 5309509 at *3 (S.D. Fla. 2006) (*Daubert* challenge rejected; Donald Sommer is well-qualified to testify about possible causes of the aircraft accident).

Comair criticizes Mr. Sommer's conclusions regarding the crew's behavior because they were not subjected to scientific testing, such as a comparison to other Comair crews, or to other crews at Blue Grass Airport. [DE 2542, p. 4]. Comair further complains that his techniques were not subjected to peer review and publication and that Sommer has never worked for a "121 carrier." *Id.* at 4-5. Returning to the bumblebee analogy, Mr. Sommer is dually qualified to testify about flight principles and from his experience with a lot more pilots. The fact he never worked for a Part 121 carrier is a proper subject for cross examination as to the weight of his testimony, but it does not exclude his testimony. Comair does not otherwise challenge the reliability of Mr. Sommer's testimony, and the Court find that he meets the requirements of Rule 702.

    **2.**    **Barry Schiff**

Captain Schiff has thirty-four years experience as an airline pilot; 27,000 hours of flight time; is a designated FAA pilot examiner; has investigated aircraft accidents and testified in numerous aviation matters; and has published more than 1,400 articles and 14 books relating to aviation and piloting. He is offered by Plaintiffs to testify regarding procedures to be followed by airline pilots,

Federal Aviation Regulations and other standards applicable to pilots, training of airline flight crews, crew resource management, and situational awareness. [DE 2897, p. 22].

Comair's criticisms that Captain Schiff's testimony "does not fall within the scientific context of *Daubert*" and that his methods were not subjected to peer review are addressed above. Nonscientific testimony is admissible if based on "technical or other specialized knowledge" that will assist the trier of fact. Fed. R. Evid. 702.

Plaintiffs note that Mr. Schiff's methodology is the same as that used by the National Transportation Safety Board investigators and has been used by pilot experts in countless aviation accident cases. They state it is the same methodology used by Comair's expert and is based upon applicable aviation industry, federal, and Comair standards for pilots. Mr. Schiff investigated the facts of the accident and applied his extensive experience and specialized knowledge to determine what caused or contributed to this accident. [DE 2897, pp. 26-27].

The Court has considered Comair's arguments and finds that Plaintiffs have demonstrated that Captain Schiff meets the requirements of Rule 702.

      **3.**      **Tim Olmsted**

Tim Olmsted was a demonstration pilot for Bombardier and has extensive experience as a former operations inspector with the Federal Aviation Administration. He was a chief pilot and director of operations for a Part 121 commercial air carrier. [DE 3132, p. 15]. As part of his experience, Mr. Olmsted audited carriers like Comair for compliance with FAA rules and regulations. He conducted over 200 FAA Enforcement Investigative Reports analyzing the level of error of the crew, as to whether the crew acted negligently or carelessly and recklessly under the FAA definitions of those terms. [DE 2897, p. 107].

Comair claims that Mr. Olmsted is not qualified to render expert testimony regarding two airline industry standards, independent safety audits and that he has never participated in that kind of audit. [DE 2682, pp. 4-5]. Plaintiffs respond that Mr. Olmsted conducted numerous audits for

the FAA which similarly determine whether a carrier can provide evidence of compliance with a regulation. He also conducted numerous initial operating line checks and enroute line checks for the FAA for Part 121 carriers where he was checking pilots for compliance with FAA rules and regulation. It is not necessary for Mr. Olmsted to have participated in a particular audit in order for him to read and interpret the results based on his experience with similar audits.

Comair contends Mr. Olmsted does not have relevant Part 121 experience because his former employer, Business Express, "was a freight business, not a passenger carrier." [DE 2682, pp. 8-9]. Plaintiffs respond that Business Express not only is a passenger airline, but also a Delta Connection Airline. [DE 2897, p. 106].

Comair argues Mr. Olmsted is not qualified to offer opinions regarding Part 121 line check programs, airmen or cockpit procedures "because he has no modern training, education or experience regarding Part 121 line checks" and does not have the "requisite training or experience" to render opinions on cockpit procedures. Plaintiffs respond that Mr. Olmsted has the same type ratings at the crew of Flight 5191, has conducted initial operating line checks and enroute checks for the FAA for Part 121 Air Carriers, and wrote over 200 FAA EIR reports analyzing the culpability of pilots. Plaintiffs state that he used the same methodology and training utilized in the EIR inspections to analyze the crew conduct here.

The Court finds that Plaintiffs have established that Mr. Olmsted is qualified to testify as proposed and that his methodology is reliable within the standards of *Daubert* and *Kumho*.

### 4. Captain Ewell and Captain Fortune

Comair concedes that "Captains Fortune and Ewell clearly have experience and expertise in the aviation business," but argues "neither appears to have utilized a theory or technique that has been tested or even could be tested." [DE 2551, p. 5]. The United States responds that Captain Ewell was Vice President of Flight and the Chief Pilot for American Airlines and, as such, was responsible for all flight operations and management, training and oversight for 13,000 pilots.

He is an experienced pilot with more than 25,000 flight hours. He will testify regarding the errors by the crew and Comair's management and training performance. Captain Fortune is a Boeing 777 captain with Continental Airlines and will testify regarding the standards expected of professional airline pilots and the many mistakes made by the flight crew. [DE 3132, pp. 24-25].

Comair's argument regarding the lack of scientific testing is no different than with the previous witnesses. These witnesses are qualified by their experience and specialized knowledge to testify regarding the standards of care for professional pilots and air carriers and any deviations therefrom.

### E. Legal Conclusions

Comair argues that the testimony of several of the above experts must be excluded as containing "legal conclusions." Comair filed another motion in limine on this same issue. [DE 2667]. That motion was granted in part on July 25, 2008, and would be applicable here. [DE 3176].

In response to this motion, the United States takes particular issue with Comair's claim that testimony regarding violation of a Federal Aviation Regulation ("FAR") would be a prohibited legal conclusion. This Court agrees with the United States that such evidence is admissible in most circumstances. The FARs reflect the standard of care for pilots and evidence of a violation is some evidence of negligence. *See Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1003 (5th Cir. 1998) ([F]ailure to comply with a regulation may still provide evidence that the defendant deviated from the applicable standard of care."); *In re Air Crash Disaster at John F. Kennedy Int'l Airport*, 635 F.2d 67, 76 (2d Cir. 1980) ("[T]hese regulations, as applied to the facts, outlined a standard of care against which Eastern could be tested. Thus, non-compliance with these regulations could be considered by the jury as 'some evidence of negligence on the part of Eastern Airlines.'"); *Walsh v. Avalon Aviation, Inc.*, 125 F. Supp. 2d 726, 727 (D. Md. 2001) ("Furthermore, as plaintiff's expert has pointed out, the pilot in command violated his duty to operate the aircraft

in a safe manner under FAR § 91.3(a)...."). Comair's authority of *Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838 (8th Cir. 2003) is readily distinguishable in that the case was not about industry standards or practice, but about meeting the requirements for an exclusion under the language of an insurance policy. *Id.* at 841.

    **F.    Defendant's Mental State**

Comair also seeks to exclude the expert opinions of Mr. Sommer and Captain Schiff as improper comment on the defendants' mental state. In support, Comair relies on Fed. R. Evid. 704 which prohibits expert testimony concerning "the mental state or condition of a defendant in a criminal case." Comair admits this is not a criminal case, but says, without any supporting authority, that the Court should apply the same Rule here. The Court is not persuaded by this argument.

**III.    CONCLUSION**

The Court, being otherwise fully and sufficiently advised, **HEREBY ORDERS** that Comair's motions to exclude the testimony of Donald Sommer [DE 2542], Barry Schiff [DE 2543], Tim Olmsted [DE 2682], and Captains Cecil Ewell and Michael Fortune [DE 2551] are **DENIED**.

This July 30, 2008.



Signed By:
*Karl S. Forester* KSF
**United States Senior Judge**