UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

**CIVIL ACTION (MASTER FILE) NO. 5:06-CV-316 - KSF**

**IN RE: AIR CRASH AT LEXINGTON, KENTUCKY, AUGUST 27, 2006**

**RELATING TO:**

*Hebert, et al. v. Comair*, **et al., No. 5:07-CV-320**

**OPINION AND ORDER**

\* \* \* \* \* \* \* \* \* \*

This matter is before the Court on "Comair's Motion In *Limine* Adopting Prior Motions In *Limine* And Seeking Ruling On Motions In *Limine* Previously Passed Or Denied As Moot." [DE 3474].

**I.      BACKGROUND**

One year ago, Comair filed numerous motions in *limine*, which were fully briefed. Most of the motions were ruled on by the Court in June or July 2008. Six of Comair's motions were either passed to trial or denied as moot after all cases scheduled for trial were settled. The motions for which Comair now requests a ruling are:

A.      Comair's motion to exclude evidence and argument regarding "Pilot Pushing";

B.      Comair's motion to exclude Aviation Safety Action Program reports;

C.      Comair's motion to exclude testimony of Dr. Maxine Harris and Dr. David Feinberg;

D.      Comair's motion to exclude evidence of comments posted on internet chat rooms, weblogs, or the ALPA web-board regarding the crash of Flight 5191;

E.      Comair's motion to exclude evidence regarding the runway awareness advisory system and use of global positioning systems in Comair aircraft; and

F.      Comair's motion to exclude evidence of the value of household services.

Plaintiffs in the present case adopted last year's responses by the Plaintiffs' Steering Committee ("PSC") on these motions.  [DE 3507].  The factual background and any relevant authority are addressed separately below for each motion.

II.     **ANALYSIS**

      A.     **Comair's Motion to Exclude Evidence or Argument Regarding "Pilot Pushing"**

Comair sought to exclude all evidence of "Pilot Pushing," which "generally refers to any effort to require a pilot to fly when the pilot believes that he should not be flying."  [DE 2632, p. 1]. It argued that there is no evidence of "any pilot pushing on this case or that pilot pushing had even a remote connection to the crash of Flight 5191."  *Id.*  In addition to irrelevancy, Comair argued in a conclusory fashion that evidence of pilot pushing would be unduly prejudicial under Rule 403 in that it would be for the sole purpose of misleading the jury, confusing the issues and unduly prejudicing the Defendants.  *Id. at 2.*

Plaintiffs responded that a history and practice of "pilot pushing" by Comair would make it more likely than not that the Flight 5191 crew would proceed with flying despite their better judgment.  Additionally, there is evidence that "pilot pushing" was "one of many issues that contributed to the lack of respect for the sterile cockpit rule among Comair flight crews."  Evidence of "pilot pushing" would also be relevant to show the lack of diligence and attention by Comair to safety issues, even after being put on notice.  Captain Robles testified to raising this safety issue with Comair's management well in advance of the crash of Flight 5191.  [DE 2897, pp. 46-47].

The Court also notes that Comair's motion to exclude evidence relating to pilot fatigue or its relation to scheduling was denied on July 7, 2008.  [DE 3090, p. 5].  Plaintiffs stated that First Officer Polehinke's schedule preceding Flight 5191 included a 22-hour day ending on August 26, 2006.  Defense expert Czeisler testified that Polehinke's schedule during the days preceding the crash resulted in some sleep deprivation.   Dr. Gregory Belenky's report filed with ALPA's report on the crash outlined fatigue on the part of the pilots as factors causing the crash.

Based upon the anticipated showing of relevancy and the absence of evidence of undue prejudice, Comair's motion to exclude evidence of "pilot pushing" is denied without prejudice to renew it at trial if relevancy is not shown. As the Sixth Circuit said: "Virtually all evidence is prejudicial or it isn't material." *Koloda v. General Motors Parts Div.,* 716 F.2d 373, 378 (6th Cir. 1983).

**B.     Comair's Motion To Exclude Aviation Safety Action Program Reports**

Comair sought to exclude four Aviation Safety Action Program ("ASAP") reports prepared by Captain Clay or First Officer Polehinke concerning events that occurred prior to the crash of Flight 5191. [DE 2674]. Comair claims none of these ASAP reports are relevant to the Plaintiffs' claims because the factual settings were different in terms of time, location, persons involved and the nature of the events. *Id.* at 4. To the extent the reports may have slight relevance to a crew's situational awareness, Comair argues it is significantly outweighed by the unfair prejudice to Comair. Comair elaborates on the pilots' extensive experience and argues that the use of these four reports to indicate a history of safety violations or inattention to duties by these pilots is a gross misrepresentation. *Id.* at 5.

Plaintiffs responded that these reports are relevant to the prior knowledge of Comair and the pilots "of deficiencies in their training and of mistakes that are committed by Comair pilots, and the accident pilots in particular." [DE 2897, p. 75]. Plaintiffs argue they are relevant to the "claims that Comair failed to have adequate training and quality control procedures to correct the mistakes that are revealed in the ASAP Reports," and to the manner in which these pilots operated. *Id.* Plaintiffs cite as an example Polehinke's comments in one of his reports that he was completing the fifth day of a 5-day trip which had reached 30 hours by the end of the fourth day. He noted that more vigilance is needed at the end of a long trip to reduce mistakes. *Id.* at 76.

Federal courts have held that Rule 403 is an extraordinary remedy and carries a strong presumption in favor of admissibility. *U.S. v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001). The

3

Sixth Circuit also recognized that a court should not "deprive plaintiffs of their legitimate right to place before the jury the circumstances and atmosphere of the entire cause of action which they have brought into the court, replacing it with a sterile or laboratory atmosphere...." *In re Beverly Hills Fire Litigation*, 695 F.2d 207, 217 (6th Cir. 1982). The Court finds the four ASAP reports in issue are relevant to Plaintiffs' claims and are not unduly prejudicial. Accordingly, they are admissible.

### C.      Comair's Motion To Exclude the Testimony of Dr. Maxine Harris and Dr. David Lewis Feinberg

In support of claims for loss of consortium by young children who have lost a parent, the Plaintiffs' Steering Committee designated experts Dr. Maxine Harris and Dr. David Feinberg to testify regarding the impact an unexpected, catastrophic loss of a parent generally has on a child. Comair moved in *limine* to exclude both experts, along with several others who had not been deposed. [DE 2551]. Plaintiffs responded that Comair could have deposed these experts earlier, but they had no objection to allowing supplemental briefing. [DE 2897, p. 34]. Following the depositions of Harris and Feinberg, Comair filed supplemental memoranda to exclude their testimony, [DE 3056, 3057], and the PSC responded [DE 3091]. During the July 10, 2008 Pretrial Conference, the PSC stated they intended to call only one of these experts, but they did not indicate which one. [DE 3132, p. 16].

Comair's primary argument for excluding the testimony of Dr. Feinberg is that he examined only one former claimant, Trenton Byrd; thus, Comair argues he should not be permitted to offer testimony on behalf of any other claimants. [DE 3056]. The medical records, educational records, psychological test results and other information on which Dr. Feinberg relied pertained only to Trenton Byrd. *Id.* at 3. Accordingly, Comair claims that Dr. Feinberg could not apply accepted principles and methods to the facts of any case except Byrd's. Additionally, Comair argues that Dr. Feinberg's testimony regarding any claimant other than Byrd would not "rise to the level of reasonable certainty." *Id.* at 5. Instead, Comair claims that the testimony could only describe a

4

general range of possibilities that a child might endure upon the loss of a parent and that such "generalized testimony falls far short of the evidentiary threshold of reasonable certainty for medical testimony." *Id.* at 6. Finally, Comair argues that "grief" is a matter within the common experience and understanding of jurors, such that no expert testimony is needed.

Comair seeks to exclude Dr. Harris because she "has not treated, evaluated, or even reviewed the records of any child whose parent died in the crash of Flight 5191." [DE 3057, p. 2]. Again, Comair argues that general testimony regarding the experience of losing a parent fails to meet the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), or the "reasonable certainty" requirement for medical testimony. *Id.* Because Dr. Harris would not offer any conclusions about the specific psychological problems, need for treatment or prognosis of any specific child, Comair contends her testimony does not reflect application of "the principles and methods reliably to the facts of the case." *Id.* at 5. Likewise, Comair claims the testimony does not meet the requirements for reasonable medical certainty and that the jury understands grief without the aid of psychologist. *Id.* at 5-8.

Plaintiffs respond by first noting that the qualifications of the two clinical psychologists were not questioned. [DE 3091, p. 2]. Plaintiffs argue that "[e]ach of these experts is uniquely positioned to offer testimony about the general experience suffered by a child who loses a parent suddenly at a young age." *Id.* at 3. Plaintiffs state that "Dr. Harris literally wrote the book on early childhood loss." *Id.* at 4. They claim the jury needs the full picture of what the children will endure through minority and "to get it from highly qualified professionals who have researched, written about and observed hundreds of children in various stages of the same loss." *Id.* at 3. Plaintiffs quote from Dr. Harris' deposition regarding "uniform and common reactions that all children experience when they lose a parent suddenly under traumatic circumstances such as a plane crash." They characterize her testimony as essentially establishing "a floor of common experiences" that children typically have. *Id.* at 8. Plaintiffs anticipate that Dr. Harris' testimony will

correlate with the testimony of family, friends and others and their observations regarding these specific children. *Id.* They further argue that the testimony will be helpful to the jury in understanding the magnitude of the loss experienced by a child, and to educate them regarding the emotional reactions any child in such a tragedy would carry throughout her childhood.

In support of their position, Plaintiffs rely on *Estate of Embry v. GEO Transp. of Indiana, Inc.*, 478 F. Supp.2d 914 (E.D. Ky. 2007), *Volger v. Blackmore*, 352 F.3d 150 (5th Cir. 2003), and *Haley v. Pan American World Airways, Inc.*, 746 F.2d 311 (5th Cir. 1984), all of which admit general expert testimony regarding grief or fear of death. Plaintiffs also disagree that the grief associated with the loss of a parent in a sudden, violent death is "a universally experienced emotion that is well within the common sense understanding of jurors."

The Sixth Circuit recently summarized the standard for admissibility of expert testimony as follows:

> [A] proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by "knowledge, skill, experience, training, or education." Fed.R.Evid. 702. Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* Third, the testimony must be reliable. *Id.*

*In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 528-29 (6th Cir. 2008).

Comair does not challenge the qualifications of the experts. Instead, it appears to argue that general testimony regarding the grief experienced as a result of the sudden death of a parent is not reliable because the expert did not personally diagnose the child. Under Comair's theory, only the testimony of the treating physician or psychologist could ever be admitted at trial. If the testimony involved the pre-impact fear of death, no one could testify unless the victim survived. This interpretation of Rule 702 is obviously too stringent. *See Jahn v. Equine Services, PSC*, 233 F.3d 382, 389 (6th Cir. 2000).

In *Embry*, the court admitted the testimony of a psychiatrist regarding "the psychological aspects of bereavement as a general matter." *Embry*, 478 F. Supp.2d at 419. The expert there

6

made it clear to the jury that he was not offering a diagnosis regarding the two specific children with loss of consortium claims.  In *Volger v. Blackmore*, 352 F.3d 150 (5th Cir. 2003), the court affirmed admission of the testimony of a grief expert.  While the defense characterized the testimony as "unreliable" because it was not connected to the case, the court said the issue raised was one of relevance.  In *Haley v. Pan American World Airways, Inc.*, 746 F.2d 311 (5th Cir. 1984), the court affirmed admission of general expert testimony on the psychological effects associated with fear of imminent death.  Because the passenger died in the plane crash, there was no "interview" or "diagnosis" of the specific decedent's fears.

It is the opinion of this Court that Dr. Harris and Dr. Feinberg have sufficient experience studying and treating the grief of children resulting from the catastrophic loss of a parent that their testimony on the general subject is reliable and admissible.  These experts can reliably apply recognized psychological principles to the facts of this case without having to diagnose or treat each victim.  "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation."  *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 529-30 (6th Cir. 2008).  Testimony regarding the grief suffered by a typical child is not unsupported speculation.  Any differences between these children and the typical child can be fully explored during cross-examination.

This Court also disagrees that the impact of such an event on a child is a matter of common understanding such that professional testimony would not aid the jury.  Even the rare  person who endured such an event may not appreciate how it has impacted their life.  The testimony of an experienced mental health professional would aid the jury in understanding the loss of consortium damages typically suffered in such a case.

### D.   Comair's Motion to Exclude Evidence of Comments Posted on Internet Chat Rooms, Weblogs, or the ALPA Web-board Regarding the Crash of Flight 5191

This motion was considered earlier in the Court's Opinion and Order dated July 7, 2008.

[DE 3090, pp. 6-7].  That discussion remains relevant and is repeated below for convenience.

Comair seeks to exclude all comments posted on weblogs or chat rooms as irrelevant, unduly prejudicial and non-admissible hearsay.  It makes specific reference to postings on the Air Line Pilots' Association (ALPA) WebBoard for illustrative purposes and, particularly, deposition Exhibit 703 which it claims were used to show animosity between Comair and its pilots.  It argues that these postings do not make it more or less probable that Comair or the crew was negligent, and it appears their only purpose is to embarrass or unduly prejudice Comair by inferring that Comair does not have a healthy relationship with its employees.  It claims that the postings were made by a minority of Comair pilots and do not reflect the opinions of all pilots.  Finally, it claims the postings are inadmissible hearsay.  It notes that Comair can cure the hearsay issue by having the individual pilots testify regarding their postings, but it claims this would be an abuse of judicial economy.

The United States responds that these postings are all comments made by Comair pilots and many may constitute admissions under Rule 801.  The topics were Flight 5191, the cockpit voice recorder, the violations of sterile cockpit and other Comair procedures, and taking off from a dark runway at night.  Captain Frykman confirmed his weblog statements in his deposition and said that taking off when you cannot see the runway is not safe and violates FAR 91.13.  He agreed that intentionally taking off on such a runway would be careless.  The United States argues that this testimony is obviously relevant and, if Captain Frykman is called as a witness, the parties should be able to ask about these subjects and the posting he made on the web. [DE 2856, pp. 10-11].

Plaintiffs respond that these comments by Comair pilots are admissions by a party and are not hearsay.  They further argue that these comments are probative as to their theory that Comair is liable for punitive damages for its own reckless conduct, aside from its liability as the employer of the pilots.  They note that one pilot who heard the many sterile cockpit violations said it "sounded pretty Comair normal to me."  They argue that the potential inference of animosity between Comair and its pilots is not unfair prejudice, but merely the damage that results from "the legitimate probative force of the evidence."  Plaintiffs acknowledge that certain comments, such as the one about Mr. Soaper's wife are irrelevant and inappropriate. [DE 2897, p. 77, n. 53].

*Id.*

Plaintiffs included in their exhibit list Deposition Exhibit 703.  [DE 3562, incorporating DE 2686]  Exhibit 703 involves a number of blog comments by various Comair pilots who were members of the ALPA.  The document is hearsay and is inadmissible absent live testimony by the

authors of the comments or some exception to the hearsay rule.  Plaintiffs' conclusory statement that the comments are "admissions" is not sufficient to satisfy the requirements of Federal Rule of Evidence 801(d)(2).  If Plaintiffs can overcome the hearsay hurdles, some of the comments would be relevant to Plaintiffs' claims against Comair.  Significant redaction of the document is likely to be required, however.  Accordingly, the Court will grant Comair's motion to exclude this document in its present form, without prejudice to Plaintiffs to cure the hearsay and relevancy issues and offer portions of the blog comments at trial.

### E.   Comair's Motion to Exclude Evidence Regarding the Runway Awareness Advisory System and Use of Global Positioning Systems in Comair Aircraft.

Comair sought to exclude all testimony regarding the Runway Awareness and Advisory System ("RAAS") and the use of Global Positioning Systems ("GPS") in Comair aircraft.  [DE 2670]. For grounds, Comair states that Honeywell's RAAS had not been certified by the FAA or Bombardier for use in CRJ 100 planes, was not compatible with the GPS on CRJ 100 aircraft, was still in developmental phases, and had technical issues that raised concerns as to RAAS's reliability and safety for line-use operations at that time.  Accordingly, Comair claims evidence regarding this technology is irrelevant and would be unduly prejudicial.

Comair offered the expert report of Kevin P. Finan, a retired Navy Captain who had significant experience as Executive Vice President of Operations for a major US airline and who attempted to implement the RAAS technology at his airline between 2004 and 2006.   The technology was designed to improve airport surface situational awareness for pilots through aural position information to flight crews.  [DE 2670, Ex. 1].  While the system performed as designed, it blocked out ATC communications, interfered with normal crew callouts, involved distracting volumes, and provided alerts after a runway incursion would have occurred.  These unintended safety consequences were ultimately resolved by 2008.  In Mr. Finan's opinion, "it was not feasible for Comair to have operated a certified RAAS system on the CRJ 100 aircraft in August 2006." *Id.* He states that neither Bombardier nor Honeywell offered a supplemental type certificate that would

enable installation and operation of the system in Comair's CRJ 100 aircraft in August 2006; the system was incompatible with the avionics in the CRJ fleet in August 2006; and even if it could have been implemented, Comair would have experienced some of the same operational problems that his airline encountered when trying to implement the system.  He also noted that Honeywell did not update its software so that the RAAS could be compatible with GPS software used on the CRJ 100 aircraft until October 2006.  *Id.*

Plaintiffs did not offer any expert testimony to contradict this opinion.  Instead, they focused on the deposition of David Wahn, Comair's avionics manager, who testified that he was familiar with Honeywell's system and that it was designed to provide an oral warning that they were approaching a specific runway or were on a specific runway.  [DE 2897, pp. 72-75].  He also admitted that "the RAAS system was available to you, to Comair, before the crash...."  *Id.* at 74.  Plaintiffs also rely on the testimony of Donald Sommer, Plaintiffs' expert, who testified that there were other GPS drive systems that were available to Comair.  *Id.*

This Court recognizes that it is not to weigh the credibility of conflicting expert testimony, but Plaintiffs have failed to demonstrate any real conflict in the present case.  The fact that other avionic systems were available is undisputed.  Equally undisputed is the evidence that they were incompatible with the CRJ 100 in August 2006 and were suffering from operational problems on other aircraft.  Accordingly, evidence regarding the availability of the RAAS and similar systems is not relevant to the issues of negligence in this case.

Comair also seeks to exclude evidence that some of its aircraft were not equipped with GPS technology.  The specific aircraft involved in the crash was equipped with GPS technology, and the equipping of other aircraft is not relevant.  Comair notes that there is no evidence that handheld GPS devices or similar devices that might have been used on this aircraft were compatible with the CRJ 100 or certified for use in such aircraft.  It also states that the FAA prohibited these devices in the cockpit unless they were approved by a certificate holder.  [DE2670, p. 4].  The Court finds

that evidence of the equipping of other aircraft or the availability of prohibited devices is not relevant in this case.

       **F.**    **Comair's Motion to Exclude Evidence of the Value of Household Services.**

Comair previously moved to exclude evidence regarding the value of household services in the case of Plaintiff Combs. The motion was renewed regarding the present Plaintiffs in DE 3470 and was mentioned in the present motion filed May 1, 2009. This motion was granted in an Opinion and Order dated June 3, 2009 [DE 3560].

**III.**    **CONCLUSION**

       A.    Comair's motion to exclude evidence and argument regarding "Pilot Pushing" [DE 2632] is **DENIED**;

       B.    Comair's motion to exclude four Aviation Safety Action Program reports [DE 2674] is **DENIED**;

       C.    Comair's motion to exclude the expert testimony of Dr. Maxine Harris and Dr. David Lewis Feinberg [DE 2551] is **DENIED**;

       D.    Comair's motion to exclude evidence of comments posted on internet chat rooms, weblogs, or the ALPA web-board regarding the crash of Flight 5191 [DE 2675] is **GRANTED WITHOUT PREJUDICE** to Plaintiffs to cure hearsay and relevancy issues and offer portions of this evidence at trial; and

       E.    Comair's motion to exclude evidence regarding the runway awareness advisory system and use of global positioning systems in Comair aircraft [DE 2670] is **GRANTED**.

This June 30, 2009.



                       **Signed By:**

                       *__Karl S. Forester__*   K S F

                       **United States Senior Judge**