UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

**CIVIL ACTION (MASTER FILE) NO. 5:06-CV-316 - KSF**

**IN RE: AIR CRASH AT LEXINGTON, KENTUCKY, AUGUST 27, 2006**

**RELATING TO:**

*Hebert, et al. v. Comair*, et al., No. 5:07-CV-320

**OPINION AND ORDER**

\* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Comair's "motion to rule as to privilege relating to Ike Huval and Carl Duhon Testimony" [DE 3625]. The matter having been briefed, it is ripe for consideration.

**I.  BACKGROUND**

The marital status of Plaintiff Jamie Hebert ("Hebert") recently was placed in issue as a result of her renewed claim for loss of spousal consortium. Comair desires to take the trial depositions of Hebert's former attorneys, Ike Huval and Carl Duhon, to assist in proving or disproving Hebert's claim that she was married to Bryan Keith Woodward at the time of his death. Comair anticipates that Hebert will assert attorney-client privilege and requests a determination by this Court on whether the privilege is applicable.

The factual background to this request is as follows. A few days after the crash of Flight 5191, Hebert's mother filed documents in the Louisiana state court to confirm Jamie Hebert as Tutrix of the minor children. [DE 3625, Ex. A]. These documents stated that "Petitioner was the 'common-law wife' of Bryan Keith Woodward, though no marriage ceremony was held before a civil or religious authority, at the time of his death on August 27, 2006." Hebert's mother also filed a petition for Jamie Hebert to be appointed Administratrix of the Succession of Bryan Keith

Woodward. *Id.*, Ex. B. The petition said Woodward was Hebert's "common-law husband" and further said they "were living together as 'common-law husband and wife' though no marriage ceremony was ever held before a civil or religious authority." *Id.* The verification of the documents states that she has read them and "believes all of the allegations of fact contained therein are true and correct based on her personal knowledge, information and belief." Exs. A, B. An Affidavit of Death, Domicile and Heirship signed and sworn to by Hebert's mother and her sister-in-law stated in paragraph 4 that the "Decedent, Bryan Keith Woodward, was the common-law husband of Jamie Hebert .. for approximately 20 years, though no marriage ceremony was held before a civil or religious authority." Ex. B. Each of these documents was notarized by Hebert's then-counsel, Ike Huval.

Hebert's present counsel, David Rapoport, noticed his appearance on behalf of Hebert on July 31, 2008. [DE 3231]. In the fall of 2008 through different Louisiana counsel, Hebert filed a Petition to File Corrected Affidavits to Establish Heirship in the Louisiana Probate Court. [DE 3625, Ex. C]. She swore that she and Woodward were married in a ceremony in Louisiana on December 5, 2004, and that the affidavits of her mother and sister-in-law contained "substantial errors" that needed to be corrected. *Id.* An Affidavit of Matrimony was filed, along with affidavits from Hebert's mother, sister-in-law, and several others who swore they were present at the 2004 ceremony and at the signing of the Affidavit of Matrimony. Hebert's mother swore she and her daughter-in-law rushed to a local lawyer's office on August 29, 2006, to "sign papers claiming the body" of Woodward and did not read what she signed until recently. [DE 3625, Ex. E]. Hebert's mother claimed that paragraph 4 of the prior statement she signed regarding no marriage ceremony was "not completely accurate" and should be corrected to reflect a marriage ceremony which she attended December 5, 2004. *Id.* Hebert's sister-in-law signed a similar affidavit stating she did not attend the wedding ceremony on December 5, 2004, but did arrive "in time to witness the signing

2

of the marital documents." [DE 3631-5]. She also claimed she did not read what she signed and sought correction of paragraph 4 of her affidavit to reflect the 2004 ceremony. *Id.*

Comair apparently seeks to depose Huval and Duhon regarding the source of their information that Hebert was Woodward's common-law wife. [DE 3625, p. 3]. Comair claims the attorney-client privilege does not apply because the communication may have been between someone other than Hebert and her lawyer. Even if the communication was between attorney and client, Comair argues that the communication fits within exceptions for furtherance of crime or fraud or documents attested by a lawyer. Comair claims Hebert "perpetrated a fraud either by falsely telling her former attorneys that she was common law married when she was not, or by later falsely denying her common law marriage to Woodward." *Id.* at p. 5. Comair next claims that communications to an attorney regarding a document attested by the attorney are not protected by the privilege. Lastly, Comair claims Hebert may have waived any privilege regarding the source of the common-law marriage language by voluntarily disclosing or consenting to disclosure of a significant part of the privileged matter.

Hebert responds that courts should be reluctant to interfere with the attorney-client privilege in light of the chilling consequences. [DE 3650]. She argues that her mother and her sister were her "representatives" within the meaning of KRE 503(b)(1) when communicating with counsel, so that the privilege would apply. She further claims that Comair has failed to show by a preponderance of the evidence that she committed fraud. Hebert distinguishes Comair's authority and claims that the exception for documents notarized by an attorney would only allow questions concerning the oath administered when the documents were filed. Finally, Hebert argues that Comair's interpretation of waiver under KRE 509 would result in a waiver of the privilege for all documents verified by the client and filed by an attorney, thereby largely eliminating the privilege.

3

**II. ANALYSIS**

Comair's request places the Court in the unusual posture of attempting to determine whether communications are privileged in advance of any attempted discovery or assertion of privilege. "[N]ot all communications between an attorney and a client are privileged, and the burden is on the party claiming the privilege to prove that it exists as to the communications so claimed." *The St. Luke Hospitals, Inc. v. Kapowski*, 160 S.W.3d 771, 775 (Ky. 2005). The underlying facts presented and Hebert's response suggest the likelihood of a privilege, but Hebert does not provide any concrete facts to support a claim of privilege. At best, there is an argument by counsel that, if Hebert's relatives were her representatives and were authorized to obtain legal services from these attorneys and made communications with counsel regarding marital status in that context, there should be a privilege. In the context of a psychotherapist, Kentucky courts have held that "neither a blanket assertion of the privilege nor a bare showing that the recipient of the communication is a psychotherapist would be sufficient." *Stidham v. Clark*, 74 S.W.3d 719, 725 (Ky. 2002).

Assuming for the sake of this motion that a privilege exists, the burden is on Comair to show by a preponderance of the evidence that the privilege has been waived or that the communication falls within an exception. *Id.* at 727. *See also Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 385 (W.D. Ky. 2007) ("A litigant in Kentucky who desires to obtain discovery of information asserted to be protected by the attorney-client privilege, or some other privilege arising under Kentucky law, must first persuade the trial court by a preponderance of the evidence that the desired information either falls outside the scope of the privilege for one reason or another, or that an exception to the privilege exists.").

With respect to the fraud exception, Comair has demonstrated that completely contradictory statements were filed in the Louisiana courts regarding Plaintiff's marital status. The affidavits filed in 2008, two years after the crash, were clearly aimed at establishing that Jamie Hebert was Bryan

4

Woodward's spouse at the time of his death. Marital status could result in significant benefits to Plaintiff, not only from a claim of loss of consortium, but also potentially from insurance or social security benefits. Yet, Plaintiff's mother and her sister-in-law, who swear in 2008 that they attended a marital ceremony in 2004, also swore several times in 2006 that there was no marital ceremony. The fact that the person performing the alleged ceremony is Plaintiff's relative and that all witnesses are relatives also presents suspicious circumstances.

The *Stidham* court noted that "a lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome the privilege." *Stidham*, 74 S.W.3d at 727, quoting *United States v. Zolin*, 491 U.S. 554, 571 (1989). The approach announced in *Zolin* "permits a reviewing court to examine the allegedly privileged materials *in camera* to determine whether the asserted privilege has been waived or the materials at issue fall outside the scope of the privilege or are subject to a specified exception." *Invesco*, 244 F.R.D. at 384, discussing *Stidham*. Comair would only need to "present evidence sufficient to support a reasonable belief that *in camera* review might yield evidence that establishes the applicability of the asserted exception to the privilege." *Id.* The testimony of counsel in this case definitely could yield evidence to support or refute any claim of fraud. It is the opinion of this Court that Comair has presented sufficient evidence to support a reasonable belief that *in camera* review might yield evidence of a privilege or an exception to the privilege.

The trial of this case is less than one month away and should not be delayed as a result of Comair's request. If the parties can depose Plaintiff's former counsel on the limited issue of the statements made to counsel in 2006 regarding Plaintiff's marital status without jeopardizing the present trial schedule, the Court will allow that discovery for purposes of providing the testimony to the Court for *in camera* review to determine if there is a privilege and if any exception applies. The testimony of counsel will be deemed confidential and subject to the Protective Order Regarding Confidential Information [DE 285] pending the Court's *in camera* review.

III.   **CONCLUSION**

   **IT IS ORDERED**

   1.   Comair's motion to rule regarding privilege of testimony by Huval and Duhon [DE 3625] is **GRANTED TO THE EXTENT** that Comair may take the trial testimony of Huval and Duhon on the limited issue of statements made to them in 2006 regarding Plaintiff's marital status and may provide the same to the Court, under seal, for *in camera* review to determine the applicability of any attorney-client privilege and the potential admissibility of the evidence;

   2.   The Court will permit simultaneous briefs, not to exceed ten pages, to be filed no more than five days after the filing of any sealed testimony, and

   3.   The testimony shall be subject to the Protective Order Regarding Confidential Information, pending further orders of the Court.

This November 4, 2009.



Signed By:
*Karl S. Forester*  KSF
United States Senior Judge