UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

**CIVIL ACTION (MASTER FILE) NO. 5:06-CV-316 - KSF**

IN RE: AIR CRASH AT LEXINGTON, KENTUCKY, AUGUST 27, 2006

RELATING TO:

*Hebert, et al. v. Comair*, et al., No. 5:07-CV-320

**OPINION AND ORDER**

This matter is before the Court on Comair's motion for leave to interview jurors. Having been fully briefed, this matter is ripe for consideration.

**I.   BACKGROUND**

Following a jury trial on compensatory damages, Comair filed a motion to interview the trial jurors "to learn more about its own case, the strengths and weaknesses of its arguments and styles, and the effectiveness of how its case was presented in comparison to the presentation of the Plaintiffs' case. The purpose of this motion and the interviews, if permitted, is not to challenge the validity of the verdict or the amount of the verdict." [DE 3704]. Comair states that it will abide by any juror's expression of a desire not to communicate. *Id.* at 2.

Plaintiffs oppose the motion, initially noting that Local Rule 47.1(a) contains a general prohibition against contacting, interviewing, or communicating with any juror after a trial, "unless permitted by the Court." While no standards for granting permission are set out in the local rule, Plaintiffs point to several federal circuit court decisions explaining why juror interviews have historically been disfavored. Comair's authorities are also distinguished.

Comair replies that it "is not suggesting that there was some juror impropriety or misconduct at trial," but rather it seeks to learn about "the strengths and weaknesses of its arguments and

styles and the effectiveness of how its case was presented in comparison to the presentation of the Plaintiffs' case." [DE 3720, p. 2]. Comair states its "goal is to take advantage of the unique trial posture of this case to benefit the presentation of the punitive damages trial, which looks to be an exceedingly complex phase of this case." *Id*. Comair also suggests the Court could "supervise the interviews" to avoid any potential problems with harassment or exploitation.

## II. ANALYSIS

Comair is not attempting to impeach the jury verdict and recognizes the limitations upon such inquiries. To place its request in context, however, it is useful to review Federal Rule of Evidence ("FRE") 606(b), which provides in part:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

FRE 606(b) "reflects the policy that interrogation of jurors should be prohibited except with regard to whether extraneous prejudicial information was improperly brought to their attention or whether any outside influence was improperly brought to bear upon any juror." Robert S. Hunter, Federal Trial Handbook Civil, § 72:25 (2009). "Federal courts have generally disfavored postverdict interviewing of jurors, thereby protecting the jurors from an effort to find grounds for postverdict charges of misconduct, reducing the chances and temptations for tampering with the jury and sparing district courts time consuming and futile proceedings." *Id.*

In *Tanner v. United States*, 483 U.S. 107, 119 (1987), "the Supreme Court explained that public policy considerations have long emphasized the necessity of shielding jury deliberations from public scrutiny." *United States v. Logan*, 240 F.3d 350, 379 (6th Cir. 2001). Logan continued:

> [I]t is clear that the very purpose behind Rule 606(b) is to preserve one of the most basic and critical precepts of the American justice system: the integrity of the jury. Rule 606(b) allows for a system in which jurors may engage in deliberations with the utmost candor, performing in an uninhabited way the fact-finding duties with which they are charged. In this manner, the Rule provides jurors with an inherent right to

2

      be free from interrogation concerning internal influences on the decision-making process.

*Id.* at 379-380.

      Similarly, the Fourth Circuit condemned inquiries into jury deliberations as follows:

      The inviolability of the jury room from outside influence of any sort, actual or potential, is a prime necessity in the administration of justice. That unqualified rule requires that if a person, whether on the jury or not, knows of such outside influence, or an attempt at it, he must at once report his information to the court. The same rule requires that jurors are not to be harassed in any manner because of a verdict they have rendered. If jurors are conscious that they will be subjected to interrogation or searching hostile inquiry as to what occurred in the jury room and why, they are almost inescapably influenced to some extent by that anticipated annoyance. The courts will not permit that potential influence to invade the jury room. He who makes studied inquiries of jurors as to what occurred there acts at his peril, lest he be held as acting in obstruction of the administration of justice. Much of such conversation and inquiry may be idle curiosity, and harmless, but a searching or pointed examination of jurors in behalf of a party to a trial is to be emphatically condemned. It is incumbent upon the courts to protect jurors from it.

*Rakes v. United States*, 169 F.2d 739, 745-746 (4th Cir. 1948). Comair dismisses this condemnation as "dicta." [DE 3720, p. 3]. Comair is correct that this was not the holding of the case, but portions of the discussion have been cited with approval by a number of courts. This Court also finds the analysis persuasive.

      The Court is confident that counsel for Comair would not intentionally harass any juror and would fully respect any juror's desire not to speak. At the same time, the Court is mindful that many, if not all, of the jurors in the compensatory damages trial are still fulfilling their terms of service and are currently sitting on juries in other matters. In all likelihood, an interview regarding deliberations in an earlier trial would have some impact on a juror's willingness to deliberate openly in a present or future case. It is also conceivable that one of the former jurors could be called as a prospective juror for the punitive damages trial.

      Another consideration is the fact that Comair currently has pending before the Court a motion for a new trial or to alter and amend the verdicts rendered in favor of Lauren Hebert and Mattie Kay Hebert as excessive and a result of unfair passion and prejudice. The temptation would

be strong to engage in a fishing expedition to learn if there were other grounds to set aside the verdict. "Federal courts have generally disfavored post-verdict interviewing of jurors. We have repeatedly refused to 'denigrate jury trials by afterwards ransacking the jurors in search of some new ground, not previously supported by evidence for a new trial.'" *Haeberle v. Texas International Airlines*, 739 F.2d 1019, 1021(5th Cir. 1984). When considering a similar request to interview jurors solely for purposes of educating counsel, the *Haeberle* court said:

> The first-amendment interests of both the disgruntled litigant and its counsel in interviewing jurors in order to satisfy their curiosity and improve their advocacy are limited. We agree with the district court's implicit conclusion that those interests are not merely balanced but plainly outweighed by the jurors' interest in privacy and the public's interest in well-administered justice.

*Id.* at 1022.

Comair relies on *Irving v. Bullock*, 549 P.2d 1184 (Alaska 1976) for the proposition that juror interviews for educational purposes may be proper. However, that court adopted a much more limited approach.

> Henceforth, an attorney wishing to obtain evidence concerning the behavior of jurors in the performance of their duty should first file a motion in the trial court for leave to do so, stating in detail the reasons therefore. The trial court shall weigh such applications with great care, granting leave to make such an inquiry only where it appears that there is a strong likelihood that an obstruction of justice may have occurred. If the motion is granted, the court shall specify the manner in which such evidence is to be obtained.

*Id.* at 1188, n. 10.

The heavy workload of the federal court at the present time is another factor that impacts the Court's decision. "Posttrial questioning of jurors must only be conducted under the strict supervision and control of the court with inquiry restricted to those matters found by the court to be both relevant and proper." Robert S. Hunter, *supra.*

This Court is not saying that jurors could never be interviewed, but the circumstances in support should be extraordinary. It also would have been helpful if an oral request had been made <u>before</u> the jury was discharged so they could have been advised by the Court. "[T]he better

4

practice ... would be to request the court, before the discharge of the jury, to advise the jurors that they may talk to counsel about the case, if they so desire but that they have no obligation to do so." *Id.*

Under all of the present circumstances, Comair's motion will be denied.

### III. CONCLUSION

**IT IS ORDERED** that Comair's motion for leave to interview jurors [DE 3704] is **DENIED**.

This February 1, 2010.



Signed By:
*Karl S. Forester* KSF
United States Senior Judge