UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

**CIVIL ACTION (MASTER FILE) NO. 5:06-CV-316 - KSF**

IN RE: AIR CRASH AT LEXINGTON, KENTUCKY, AUGUST 27, 2006

RELATING TO:

*Hebert, et al. v. Comair*, et al., No. 5:07-CV-320

**OPINION AND ORDER**

* * * * * * * * * *

This matter is before the Court on the partial motion of Comair for a new trial or, alternatively, to alter and amend the Judgment filed December 9, 2009. For the reasons discussed below, the motion will be denied.

**I.     BACKGROUND**

Following a four-day jury trial and monetary awards for Plaintiffs, Comair moves for a new trial, claiming that the damages awards to the two children of Bryan Woodward for loss of parental consortium are excessive; that the testimony of Plaintiffs' expert, Dr. Osofsky, was not relevant because it was beyond the scope of the measure of damages for loss of affection and companionship and was unduly prejudicial; and that Plaintiffs' counsel's closing argument was inflammatory and unduly prejudicial. In the alternative, Comair requests that the jury's award of $3,000,000 to Jamie Hebert as Guardian and Next Friend of Mattie Kay Hebert be reduced to $600,000 and that the award of $2,000,000 to Lauren Madison Hebert be reduced to $200,000. [DE 3715]. Comair does not challenge the award of $1,350,000 for the destruction of Woodward's power to earn money, nor the award of $750,000 for his pain and suffering.

Plaintiffs respond that the case on which Comair relies, *Hyman & Armstrong P.S.C. v. Gunderson*, 279 S.W.3d 93 (Ky. 2008), affirmed an award of $6,000,000 for loss of parental

consortium for two children. Plaintiffs reject Comair's sole distinction that the *Gunderson* children were young and should have recovered more for the longer period of time they lost consortium. They argue the evidence in this case showed that Lauren and Mattie Kay suffered far more severely from the loss of their father than did the *Gunderson* children.

With respect to Dr. Osofsky's testimony, Comair reiterates its pretrial argument that testimony that the girls suffered from post traumatic stress disorders and dysthymic disorders was beyond the scope of damages for loss of consortium. [DE 3715-2, p. 4]. Comair also raises new issues that Dr. Osofsky last saw the girls a year before trial, did not administer any psychological tests, and had not treated them. It argues her testimony is so stale and qualified that it should not have been admitted under Federal Rule of Evidence 702 and was unduly prejudicial under Rule 403. Comair also objected for the first time at trial that photographs utilized with her PowerPoint presentation were unduly prejudicial.

Comair's final claim is that Plaintiffs' closing argument was unduly prejudicial. Comair contends that Plaintiffs should not have been able to mention fault and certainly should not have been able to say that Bryan Woodward was "killed." It contends that the argument was so inflammatory as to result in the excessive verdicts for loss of consortium.

## II. ANALYSIS

### A. Whether the verdicts are excessive

The procedural issue of whether to grant a motion for new trial is governed by Fed. R. Civ. P. 59, but the substantive question of whether the verdict is excessive or inadequate is governed by state law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."). The standard for review of a verdict as excessive is a matter of state substantive law. *Id.* at 429-431. "*Erie* precludes a recovery in federal court significantly larger than the recovery that would have been tolerated in state court." *Id.* at 431. *See also, Estate of Embry v. Geo Transportation*

2

of Indiana, Inc., 478 F. Supp.2d 914, 918 n. 5 (E.D. Ky. 2007) ("Kentucky law governs these motions" [that a verdict is excessive].).

The standard for excessive verdicts in Kentucky was described in *Wilson v. Redken Laboratories, Inc.*, 562 S.W.2d 633 (Ky. 1978).

> It is this court's opinion that the "first blush" rule used by the courts as it relates to excessive damages simply means that the judicial mind immediately is shocked and surprised at the great disproportion of the size of the verdict to that which evidence in the case would authorize. This court has stated:
>
>> The rule is that a verdict will not be set aside as excessive, unless it is so grossly disproportionate as to the measure of damages, or is palpably against the evidence, as to shock the conscience and raise an irresistible inference that it was influenced by passion or prejudice.

*Id.* at 636 (quoting *Cole & Crane v. May*, 185 Ky. 135, 214 S.W. 885, 887 (1919)). *See also Fossett v. Ligon Specialized Haulers, Inc.*, 1985 WL 13962 at *2 (6th Cir. 1985) ("Under Kentucky law, the standard for whether a verdict is excessive is whether it is grossly disproportionate as to the measure of damages.").

More than thirty years ago, the *Redken* court affirmed an award of $30,000 for mental anguish to a woman whose hair broke off near the scalp as a result of negligently applied hair preparation. She was distressed about her appearance and still wore a wig twenty-nine months later. Although the award was liberal, the court did not find it shocking to the conscience. *Redken*, 562 S.W.2d at 637.

The damages at issue in this case are for a loss of consortium, which, by their very nature, are to compensate for imprecise and intangible losses. At the time Bryan Woodward died, Lauren was 15 and Mattie Kay was 11. The all-male jury in this case saw photographs and a video of the children and their laughter as Bryan Woodward played with them over the years. The jury heard testimony that Woodward made the girls breakfast every day and drove them more than an hour to school. [Trial transcript ("TT") 12/3/09, Jamie Hebert, pp. 71-73]. He changed jobs and rearranged his work schedule with his employer to be able to do this. [*Id.* at 72-73; 12/2/09, Tally

3

video]. There was evidence that Woodward took care of everything for the children and went above and beyond the call of duty to make every day a good day and holidays particularly special. Jamie Hebert described their relationship as follows:

> He was a dad to be envious of, for sure. The kids came first, always. There wasn't anything he didn't do for them. He took them shoe shopping, he took them to the mall, to the theater. Anything that he heard they were interested in, he was there. He did it.
>
> If it was something that was a special occasion, he -- he made sure that he would be there. And his reaction to that was that he wouldn't miss it for the world, for anything that they loved. He needed to be there and he needed to see it.

[TT 12/3/09, Jamie Hebert, p. 57]. Bryan Woodward kept Santa Claus alive by not only eating the Christmas cookies, but also by making reindeer paw prints and the footprints of elves on the floor. [TT 12/3/09, Lauren Hebert, p. 35]. Woodward kept three horses on a farm so he and the girls could go horseback riding. [TT 12/3/09, Jerry Hebert, p. 16]. On a scale of one to ten, Jamie Hebert's father rated Woodward as a dad at "close to ten – a nine and a half for sure." *Id.* Lauren described him as "a kid at heart" who took a whole week off at Christmas to play with them. [TT 12/3/09, Lauren Hebert, pp. 32, 35]. She told several stories to illustrate his kind, caring and playful nature. [*Id.* at 29-36].

Lauren also discussed the effect Bryan Woodward's death has had on her and Mattie Kay. Lauren had nightmares; Mattie Kay cries in her sleep. [*Id.* at 38]. Lauren drives Mattie Kay to school each morning, and there is crying when she leaves. [*Id.* at 39]. Lauren was a top student, but she dropped out of high school after Woodward's death and has worked hard for three years in a distance learning program just to finish the eleventh grade. [*Id.* at 41, 43, 51; 12/3/09, Jamie Hebert at 60-63]. Lauren now handles all of the family errands. [TT 12/3/09, Lauren Hebert at 39]. She cannot remember anything and has blackouts. [*Id.* at 42]. Lauren said Mattie Kay has changed and grown "hard." [*Id* at 47]. Jamie Hebert said Mattie Kay spends a lot of time in the bathroom at school crying. [*Id.* at 59].

4

Dr. Joy Osofsky, a professor of pediatrics and psychiatry at Louisiana State University with a specialization in trauma, conducted an independent psychological evaluation of Lauren and Mattie Kay. [TT 12/2/09, Osofsky, pp. 91-92, 96]. She was asked to evaluate "the impact on them of the loss of the care and love, protection, and companionship of their father in the plane crash." *[Id.* at 96]. The jury was reminded several times that they were to consider the impact only until each child's eighteenth birthday. [TT, 12/1/09, Defense opening, p. 56; 12/2/09, Osofsky, pp. 99, 121, 131; 12/7/10, Verdict form, p. 79]. Dr. Osofsky's testimony was summarized as follows:

> Q. Taking into account the opinions that you hold concerning Lauren from the time of the crash until she was 18, and Mattie Kay from the time of the crash until she'll be 18, and taking into account all you know from the rest of your practice and the many children that you've seen, how would you characterize the degree of loss that these girls have suffered?
>
> A. The degree of trauma and traumatic response that I've seen in these girls is as severe as any posttraumatic stress disorder symptoms that I've seen, with the lack of much recovery and the lack of ability to use their own internal resources. It's very, very severe and chronic.

[*Id.* at 124]. Dr. Osofsky's experience with children included crisis counseling following hurricanes Rita, Katrina, and Gustaf. [TT 12/2/09, Osofsky, p. 94].

In comparison to the evidence in this case, the two children in *Gunderson* were ages four and one week. A psychologist testified that the older boy "expressed a sense of abandonment and sadness." The younger child "had attachment and trust issues stemming from the fact that he was never able to know or bond with his mother and that the family was thrown into chaos after her death." *Gunderson*, 279 S.W.3d at 117. The loss of parental consortium award for both children in that case was $6 million. *Id.* at 100.

In *Estate of Embry*, the children were three and six years old at the time their mother was killed in an automobile accident. *Estate of Embry v. Geo Transportation of Indiana, Inc.*, 478 F. Supp.2d 914 (E.D. Ky. 2007). "The jury saw family photos and a videotape of Heather with her children, and it heard testimony from Shalynn regarding her feelings about the loss of her mother."

5

*Id.* at 918. The jury awarded $2.7 million to each child. *Id.* at 919. The court held that it could not say the awards were "grossly excessive as a matter of law." *Id.*

Comair calculates a dollar amount per year for the award in the *Gunderson* case as its basis for arguing that the larger annual amount in the present case is excessive. Loss of consortium is about much more than just time, and the loss does not fit into any mathematical formula.

The unchallenged awards for Mr. Woodward's loss of earning power and pain and suffering provide some context and illustrate the jury's careful consideration of the evidence in this case. Dr. Baldwin, Plaintiffs' economic expert, calculated a loss of earning power of $2,900,420. [TT 12/2/09, Baldwin, p. 164]. His calculations were based, in part, on testimony by Jeff Tally, Woodward's employer, that Woodward would have advanced into a management position and increased his earnings very significantly if the company was doing well. [TT 12/2/09, Tally video; Baldwin 154-55]. Dr. Hudgins, Comair's economic expert, used different assumptions to arrive at a value for Woodward's loss of the power to earn money at $1,077,072. [TT 12/3/09, Hudgins, p. 268]. She also adjusted Dr. Baldwin's analysis to arrive at a value of $2,019,535. The jury award was $1,350,000, which was less than half of the amount sought by Plaintiffs. If the jury was in any way inflamed by improper evidence, as Comair contends, it is not likely that they would have awarded an amount so far below Plaintiffs' estimate and so close to Comair's estimate.

The jury also considered Bryan Woodward's pain and suffering. The evidence was that the total time between the plane leaving the end of the runway and its stopping after hitting several rows of trees was between nine and twelve seconds. [TT 12/1/09, Dr. Kennedy, pp. 120, 153; Dr. Burton, pp. 50-51]. There was evidence of fire as the wings hit the trees before it stopped. [TT 12/1/09, Dr. Kennedy, pp. 133-134]. Bryan Woodward did not have bruises or other injuries from hitting an object, but there was soot in his lungs, and he was burned all over. [TT 12/1/09, Burton, p. 43]. In Dr. Burton's opinion, Mr. Woodward burned to death. [*Id.* at 43-44]. Assuming that Woodward was conscious until his death, the total time he would have felt physical pain and mental

6

suffering was very short, but the pain and suffering was severe. The jury obviously considered the severity of the physical pain and mental suffering to be a very important factor and awarded the estate $750,000 for these damages. Comair has not challenged this award as excessive.

In light of the evidence regarding the substantial impact on the children from the sudden loss of their father and in light of the jury's treatment of each issue in the case, this Court cannot say the loss of parental consortium awards are "so grossly disproportionate as to the measure of damages, or palpably against the evidence, as to shock the conscience and raise an irresistible inference that [they were] influenced by passion or prejudice." *Wilson v. Redken Laboratories, Inc.*, 562 S.W.2d 633, 636 (Ky. 1978) (citations omitted). "If the verdict bears any relationship to the evidence of loss suffered, it is the duty of the trial court and [the appellate] court not to disturb the jury's assignment of damages." *Childers Oil Co., Inc. v. Adkins*, 256 S.W.3d 19, 28 (Ky. 2008). The jury's verdict is supported by the evidence and should not be disturbed. Comair's motion will be denied on this ground.

**B.     Whether Dr. Osofsky's Testimony Was Irrelevant and Unduly Prejudicial**

Before trial, Comair filed two motions in limine to exclude the testimony of Dr. Osofsky. [DE 3470, 3472]. In the first motion, Comair argued that Dr. Osofsky's testimony that Lauren and Mattie Kay suffered from post traumatic stress disorder and dysthymic disorder should be excluded as irrelevant under Kentucky's measure of damages. The Court considered this argument in light of a similar argument raised and rejected in *Hyman & Armstrong, P.S.C. v. Gunderson*, 279 S.W.3d 93 (Ky. 2008) and held that the evidence was relevant and admissible. [DE 3560, pp. 1-2].

In the second motion, Comair again sought to exclude this evidence under Rule 702 on the ground that it was not based on scientifically valid methodology and was not reliably applied to the facts of the case. Comair relied on the testimony of its expert who claimed that a diagnosis of PTSD cannot result from "learning about" a violent death and further criticized the absence of

7

standardized testing of the children. The Court carefully considered these arguments and rejected them. [DE 3585].

At trial, Comair objected prior to Dr. Osofsky's testimony that "any diagnoses of the condition of these girls otherwise would be exceeding what is allowed under Kentucky law." [TT 12/2/09, p. 98]. In its post-trial motions, Comair makes no attempt to demonstrate error in the Court's original rulings. It presents no facts or legal authority that warrant a different result. Accordingly, the Court relies on its earlier opinions regarding Dr. Osofsky's testimony.

Additionally, Comair now challenges the admissibility of Dr. Osofsky's testimony on different grounds. The pretrial deadline for filing motions in limine regarding expert testimony was clearly established and known to Comair, as evidenced by the motions Comair did file. It was too late during trial to seek to exclude expert testimony on new grounds, such as the staleness of the evaluation, the lack of standardized tests or the qualifications in Dr. Osofsky's opinion. Comair also seems to claim these independent medical examinations are inadmissible because the report was filed on the deadline for expert reports and not updated through the eve of trial. There is no authority for such a claim, and it conflicts with the procedure in Fed. R. Civ. P. 35 and pretrial scheduling. Repeated updates would only be harassing to the victim. The jurors could also apply their common sense to the information provided by Dr. Osofsky as they observed the children at trial. Comair further disregards the fact that the expert testimony in *Gunderson* was based on similar evaluations to those conducted by Dr. Osofsky, and the tests in *Gunderson* were three years old at the time of trial.

Comair made no objection on these grounds during the trial. Instead, it made its arguments regarding the credibility of Dr. Osofsky's opinions through cross examination and the affirmative evidence of its own expert. Comair had the benefit of presenting its argument regarding staleness of the examination to the jury. It is not entitled to a new trial because the jury rejected it. Moreover,

any new argument Comair may have had regarding the exclusion of testimony was waived by the failure to raise it in a timely fashion.

Comair's last argument regarding Dr. Osofsky is that the photographs on her PowerPoint presentation of young girls looking sad were unduly prejudicial and led to excessive verdicts based on passion and prejudice. [DE 3743, p. 3]. Comair did not file a pretrial objection to the exhibit on this ground, as required by the Court's scheduling order. Instead, Comair waited until the demonstrative exhibit was about to be viewed to complain about the pictures. [TT 12/02/09, p. 104]. That objection was overruled, and the Court clearly brought to the jury's attention the fact that the photographs were not of Lauren or Mattie Kay, but were actresses for illustrative purposes. *Id.* at 105, 108.

> THE COURT: Let me interrupt you for one minute. I noted on the last page of the PowerPoint a child. This is not a child involved in this case but an actress; is that right?
>
> THE WITNESS: Right.
>
> THE COURT: There will be other pictures throughout here. These pictures do not represent the two children involved in this case; is that correct?
>
> THE WITNESS: Yes, your Honor. I thank you for clarifying that. I thought it was easier than just seeing words, to see these pictures.

*Id.* at 108.

Comair's argument that the photographs "misrepresented the condition of the daughters" and "led to excessive verdicts based on passion and prejudice" is not well taken. [DE 3743, p. 3]. Comair's motion for a new trial based on these grounds will be denied.

    **C.**    **Whether Plaintiffs' Counsel's Closing Argument Denied Comair a Fair Trial**

The only objection Comair made at trial to Plaintiffs' closing argument was to the statement that "Comair has failed to accept full accountability for what it has done wrong." [TT 12/7/09, p. 49]. This objection was overruled. Comair argues that liability or fault "should not have been mentioned at trial." [DE 3715, p. 5].

9

The parties in this case discussed at the pretrial conference that the jury was entitled to know there had "been a wrong" that entitled the Plaintiffs to compensatory damages from Comair. [DE 3669, p 79]. Comair had no disagreement with that. *Id.* The parties were then invited to suggest what the court "could tell the jury about why we are here." *Id.* at 83. Plaintiffs offered a Proposed Statement of the Case, which included the following statements:

> Whenever the death of a person results from an injury inflicted by the negligence or wrongful act of another, damages may be recovered for the death from the responsible party or parties. In this case, the plaintiffs are entitled to damages from Comair to compensate for certain categories of harm I will explain to you at a later phase of the trial.

[DE 3682]. Comair did not offer any statement of the case or any objection to Plaintiffs' proposal. The Court read the above statements to the jury at the outset of the trial. [TT 12/1/09, p. 16].

Plaintiffs' counsel notes that Comair repeatedly referred in its closing argument to the "suing parties." Plaintiffs responded by referencing the Court's initial remarks and stating that they had "the absolute legal right to be the suing parties in this case." Comair made no objection to these remarks. Plaintiffs also rely on the comments of the Supreme Court of Kentucky when it recognized a child's right to damages for loss of consortium: "At its core is accountability, not just monetary recovery." *Giuliani v. Guiler*, 951 S.W.2d 318, 323 (Ky. 1997). Counsel's comments were also an appropriate response to Comair's arguments that Woodward should receive only $100,000 for pain and suffering, Lauren should receive $75,000 to $100,000 for her loss of parental consortium and Mattie Kay should receive $150,000 to $200,000 for her loss. [TT 12/7/09, pp. 44, 46].

It is the opinion of this Court that Plaintiffs' reference to a failure to accept full accountability was not inappropriate in the context of this trial. Certainly, it was not so inflammatory as to warrant a new trial.

In its post-trial motions, Comair objects for the first time to several comments by Plaintiffs' counsel that Bryan Woodward was "killed" and that it was Comair's "fault." [*Id.* at 5-6]. Comair

contends these additional remarks so inflamed the jury that it led to excessive awards for loss of parental consortium. [*Id.* at 5; DE 3743, p. 3].

In *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470 (6th Cir. 2007), the court considered similar belated objections to closing arguments and said:

> If statements made during the course of closing arguments are improper, then this court may only set aside the verdict if "there is a reasonable probability that the verdict" was influenced by those arguments. *Strickland v Owens Corning*, 142 F.3d 353, 358 (6th Cir. 1998). Defendants did not object to the purportedly improper statements made by plaintiffs' counsel during closing argument and instead raised this issue for the first time in a post-trial brief that they filed on May 31, 2006. Because defendants failed to object during closing arguments, we require a heightened degree of prejudice in order to grant a new trial. *Id.; see also Portis v. Grand Trunk W. R.R. Co.,*, 28 F.3d 1214, 1994 WL 362110, at 3, 1994 U.S. App. LEXIS 17399, at *10-12 (6th Cir. 1994) (reviewing for "gross injustice" where party failed to object).

*Id.* at 478. *See also United States v. Walton*, 909 F.2d 915, 924 (6th Cir. 1990) ("[I]n a civil action, 'a principle that strikes very deep is that a new trial will not be granted on grounds not called to the court's attention during the trial unless the error was so fundamental that gross injustice would result.'").

Plaintiffs' counsel began his opening statement with this remark: "Whenever a party, through negligence, kills someone else, they have to pay for the harm that they caused." *Id.* at 40. Later, he said: "Bryan Woodward was alive and breathing in the fire, and the fire and smoke killed him." *Id.* at 44. There was no objection whatsoever to these statements. Comair's counsel, in his opening statement, said: "Our testimony is going to be, though, that there was a tremendous impact with the ground and at that particular time the persons in the plane, including Mr. Woodward, would have either been *killed* from the impact or lost consciousness." *Id.* at 53, emphasis added.

Certainly, Plaintiffs did not suggest the pilots intentionally crashed the plane. To the contrary, Plaintiffs referred to evidence that the pilots tried to slow the plane down after realizing the peril, but it was too late. [TT 12/3/09, p. 199; 12/7/09, p. 68]. Plaintiffs also note that the first

11

listed definition of "kill" in the Merriam-Webster on-line dictionary is "to deprive of life: cause the death of." http://www.merriam-webster.com/dictionary/kill. Plaintiffs also cite a number of accidental death cases in which the term is used. [DE 3722, pp. 25-26].

As discussed above, the jury in this case carefully discriminated among its damages awards and basically agreed with Comair's suggested award for loss of power to earn money. There was substantial evidence to support the awards for loss of parental consortium. There is no evidence of any "gross injustice" in the jury verdict so as to support Comair's claim for a new trial.

### D. Whether Comair Is Entitled to Remittitur

"A jury verdict should not be remitted by a court unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss." *Champion v. Outlook Nashville, Inc.*. 380 F.3d 893, 905 (6th Cir. 2004) (quoting *Gregory v. Shelby County*, 220 F.3d 433, 443 (6th Cir. 2000). "A trial court is within its discretion in remitting a verdict only when, after reviewing all evidence in the light most favorable to the awardee, it is convinced that the verdict is clearly excessive, resulted from passion, bias or prejudice; or is so excessive or inadequate as to shock the judicial conscience of the court." *Id.* at 905-906. "If there is any credible evidence to support a verdict, it should not be set aside." *American Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 475 (6th Cir. 2004). The Seventh Amendment "has long been held to preclude a court from substituting 'its own estimate of the amount of damages which the plaintiff ought to have recovered, to enter an absolute judgment for any other sum than that assessed by the jury.'" *Lulaj v. Wakenhut Corp.,* 512 F.3d 760, 766 (6th Cir. 2008) *(quoting Kennon v. Gilmer,* 131 U.S. 22, 29 (1889).

Comair seeks remittitur as an alternative to, but on the same grounds as, its motion for a new trial. The jury heard some conflicting evidence regarding the impact of the girls' loss. Comair emphasized that the girls were still making good grades in school. Jamie, Lauren and Mattie Kay testified that the loss to the girls had been devastating. Dr. Osofsky confirmed that the impact on

...

the girls was as severe as she had ever seen in her practice of working with the impact of trauma on children. The awards for loss of consortium are supported by credible evidence and should not be disturbed. *American Trim*, 383 F.3d at 475.

### III. CONCLUSION

**IT IS ORDERED** that Comair's partial motion for a new trial or remittitur [DE 3718] is **DENIED**.

This April 2, 2010.



Signed By:
*Karl S. Forester* KSF
United States Senior Judge